Roy J. Smiley and Patricia Emanuel, Admr. of the Estate of Byron E. Emanuel, Deceased, Plaintiffs-Appellees, *v.* Manchester Insurance and Indemnity Company of St. Louis, Defendant-Appellant.

(No. 72-189; 

Second District—August 23, 1973.

Barrick, Jackson, Switzer, & Long, of Rockford, (Peter S. Switzer, of counsel,) for appellant.

Reese, Schlueter & Ecklund, of Rockford, for appellees.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Defendant, Manchester Insurance and Indemnity Company of St. Louis, appeals from a summary judgment awarding plaintiffs damages in excess of policy limits due to defendant's negligence and bad faith in refusing to settle within policy limits.

Plaintiffs' complaint and accompanying documents set forth that Roy J. Smiley and Byron E. Emanuel were involved in an automobile accident with Charles Toney, who held a policy of insurance with defendant having limits of $10,000 per person and $20,000 per accident. Emanuel and Toney were killed in the accident, and Smiley was badly injured. Smiley and the Administrator of Emanuel's estate sued the Administrator of Toney's estate for negligence, asking damages of $50,000 and $100,000 respectively. The case went to trial and, after jury selection but prior to opening statements, each plaintiff offered to settle their claim for $10,000. Defendant's attorney refused. Judgment was thereafter rendered in favor of Smiley for $25,000, and in favor of Emanuel's estate for $30,000. No appeal was taken.

The Administrator of Toney's estate assigned any right of action it might have against defendant to plaintiffs in return for their agreement not to collect the excess judgments, amounting to $35,000, from the estate. Plaintiffs then instituted this action, alleging that liability in their

action against Toney's estate was not questionable, and that defendant negligently and in bad faith failed to settle plaintiffs' claims within policy limits, thereby damaging Toney's estate in the amount of $35,000. The complaint listed ten specific acts of bad faith and negligence on the part of defendant.

Defendant filed an answer denying each of the allegations of plaintiffs' complaint, and setting forth some sixty affirmative defenses.

An evidence deposition of Robert C. Bourland, Jr., the Administrator of Toney's estate, indicated that after notifying defendant of plaintiffs' original lawsuit, he received a letter from Attorney Clifford Stoner stating that Stoner represented some people who were passengers in Toney's automobile. Bourland sent this letter to defendant, and later received a letter from the law office of Knight and Knight stating that it was handling the plaintiffs' lawsuit on the part of defendant, and saying "Refer Mr. Stoner to us." Bourland had no further written correspondence with defendant or its attorney regarding plaintiffs' claims, and was not informed of any offers of settlement or the possibility of an excess verdict. He stated that an inventory of the estate showed Toney's only asset to be the insurance policy of defendant.

Samuel J. Goldenhurst, Vice President and General Counsel of defendant, William Blackwell, Claims Supervisor of defendant, and William D. Knight, Jr., defendant's attorney in the original suit, appeared before the court in response to plaintiffs' motion to produce and demand for admission of facts.

Mr. Knight stated that Blackwell authorized him to expend the $20,000 limit, with $17,000 going for the plaintiffs' claims, and $3,000 being held for the claims of the two people represented by Attorney Stoner. He said he later received a memo from Blackwell saying "Confirming our conversation of this date, you do have authority to offer our policy limit twenty thousand dollars, dispose of the pending suits should the need arise." He said that he made no offer of $17,000 to plaintiffs, and that when plaintiffs demanded $20,000, he refused the offer and let the case go to trial because accepting it would have left nothing for the other two possible claims.

Mr. Goldenhurst stated that the insurance company employed the firm of Knight and Knight to defend the original suit, and said he had seen this file from the beginning and reserved it for $21,000 (which included $1,000 for property damage). He said the company knew it had a serious case, and "it was just an outright case of negligence * * *". He agreed that the medical was more than adequate to support the verdict of $10,000 in favor of Smiley, and admitted that each of the plaintiffs offered to settle their respective claims for $10,000. He said that Knight

had both written and oral authorization to expend the full $20,000 amount of the policy, and that Knight was instructed to try to settle the two cases for $17,000, but if his back was against the wall, to pay the $20,000. Goldenhurst said he didn't know if it was bad faith or negligence on Knight's part, but "he was acting in direct violation of our instructions." He said, "I respectfully submit that this case should never have been tried. The case should have been settled in accordance with the instructions. The case was not settled in accordance with the instructions."

Goldenhurst then made a sworn statement in which he stated that he was aware that this was a policy limits case, and that his examination showed recovery definitely might run in excess of the policy limits. He said Knight raised the question of expending the full coverage on the two matters in litigation and leaving the two unfiled claims open, and said the company decided to authorize Knight to pay the full $20,000 and so advised him by telephone and in writing. He closed by saying, "I would ask the Court under the circumstances to evaluate the proposed situation as I think we now understand it. It is down to what our responsibility is and in the light of Bill Knight's conduct."

Mr. Blackwell, defendant's claim supervisor, stated to the court that Knight was given responsibility to negotiate with plaintiffs for settlement purposes both prior to and during the course of the trial.

Plaintiffs filed a motion for summary judgment on the basis of this testimony and the documents and pleadings before the court, and the motion was granted.

■■ An insurance company may so conduct itself as to be liable for an entire judgment recovered against its insured, irrespective of its policy limits. Conduct constituting fraud, negligence, or bad faith may render the insurer so liable for its failure to settle a case. (*Olympia Fields Club v. Bankers Indemnity Insurance Co.*, (1945), 325 Ill.App. 649, 673; *Cernocky v. Indemnity Insurance Co. of North America* (1966), 69 Ill.App.2d 196, 204.) No duty arises on the part of the insurer to the insured unless recovery may exceed the policy limits of the insured's protection, but if it may, the insurer has the duty "to give to the insured's interest consideration, at least *equal* to that of its own." (Court's emphasis.) *Cernocky v. Indemnity Insurance Co. of North America* (1966), 69 Ill.App.2d 196, 207.

Defendant argues that plaintiff failed to reply to the affirmative defenses stated in its answer, that they are therefore admitted, and that issues of fact preventing summary judgment are thus presented. (*Di-Battista v. Centennial Insurance Co.* (1964), 52 Ill.App.2d 84, 85.) It argues that even absent this failure on plaintiffs' part, issues of fact as

to defendant's negligence and bad faith in refusing to settle exist, and that summary judgment is improper.

We have concluded, however, that the statements and admissions made to the court on the part of the insurance company waived the issues raised by the pleadings and by the failure to file a reply, and admitted the ultimate fact of bad faith.

Goldenhurst's statements on the part of the insurance company admitted that the case was one of clear negligence on the part of the insured; that he considered it a policy limits case, with a good possibility of recovery in excess of policy limits; and that the case should never have gone to trial, but should have been settled. He said the company's attorney was authorized and instructed to settle the case for policy limits if it could not be settled for $17,000, and that Knight acted in direct violation of instructions when he failed to do so. The sole question he asked the court to consider was whether the company was responsible for Knight's conduct. This issue has not been raised on appeal.

Defendant argues that Goldenhurst's testimony does not establish that plaintiffs' claims should have been settled, because the testimony does not show that the company considered the other two possible claims against the policy when it instructed Knight to settle for policy limits. However, Goldenhurst's affidavit states that these claims were brought to the company's attention by Knight, and the company then decided to authorize payment of the full policy amount to plaintiffs.

■■ Goldenhurst's statements stand as an admission that plaintiffs' claims should and would have been settled for policy limits but for the bad faith of Knight, and waive the failure to reply to the affirmative defenses. No question of fact exists as to defendant's bad faith in failing to settle plaintiffs' claims.

Defendant further contends that recovery cannot be had because the insured's estate contained no assets except this insurance policy, and therefore could not be damaged by any judgment against it. There being no possibility of damage, defendant argues that the insured's estate received no consideration for the assignment of its claim, and the assignment was invalid.

■■ The question of whether an insolvent estate can be damaged by a judgment against it was answered affirmatively in *Wolfberg v. Prudence Mutual Casualty Co. of Chicago* (1968), 98 Ill.App.2d 190. The court conducted a comprehensive analysis of authorities in other jurisdictions, including *Dumas v. Hartford Accident & Indemnity Co.* (N.H., 1942), 26 A.2d 361, cited by defendant, and concluded that the very fact of entry of judgment constitutes damage and harm sufficient to permit recovery. It said the damage to the estate is the creation of the

liability for the judgments, and the rule of damages is that incurrence is equivalent to outlay. It also said the insured would have had an action if alive, though insolvent, and his death is no reason to give a boon to the insurer; and that, were payment the rule, an insurer with an insolvent insured would be encouraged to unreasonably refuse to settle. See Annotation, 40 A.L.R.2d 168.

We agree with the reasoning of *Wolfberg*, and note further that the possibility exists that further assets could be discovered and the estate would be forced to satisfy a seemingly worthless judgment. Defendant discounts this in the case before us, saying that the estate has in fact been closed, with no claim filed against it by plaintiffs, and that the claims would thus be barred even if assets were discovered. However, this overlooks section 204 of the Probate Act, which allows later claims to be filed if the executor or administrator files an inventory listing estate not previously inventoried. Ill. Rev. Stat. 1971, ch. 3, par. 204; *In re Estate of Bird* (1951), 410 Ill. 390, 396.

*Childress v. State Farm Mutual Auto. Insurance Co.* (1968), 97 Ill. App.2d 112, cited by defendant, is distinguishable and, in fact, was decided concurrently with and distinguished by the *Wolfberg* case. In *Childress*, the insured was wholly insulated from ever incurring any personal liability by reason of an intervening covenant by the terms of which his liability and subjection to damages were wholly removed. The insured thus could not incur liability to pay an excess judgment, regardless of what assets he possessed. Here, in contrast, judgment could be and was taken against the administrator of the estate, and the question then became the ability of the estate to pay the claim.

The judgment of the circuit court is affirmed.

Affirmed.

GUILD, P. J., and DIXON, J., concur.