SIXTH DIVISION

FILED: 05/21/99

No. 1-96-2968

SCHAL BOVIS, INC., MKDG/BUCK ) Appeal from the 

123 PARTNERSHIP, & NORTHBROOK ) Circuit Court of 

PROPERTY & CASUALTY COMPANY, ) Cook County.

)

Plaintiffs-Appellants, )

)

) 95 CH 1947

)

CASUALTY INSURANCE COMPANY, )

AMERICAN STATES INSURANCE CO., )

WAUSAU INSURANCE COMPANY and )

GREAT AMERICAN INSURANCE COMPANY, ) Honorable

) Margaret Stanton McBride,

Defendants-Appellees. ) Judge Presiding.

JUSTICE ZWICK delivered the opinion of the court:

Plaintiffs Schal Bovis, Inc. (Shal), Buck 123 Partnership (Buck) and Northbrook Property & Casualty Company (Northbrook) filed their original complaint for declaratory judgment and other relief on March 3, 1995. The complaint was in seven counts. Counts I-V were based on defendants Casualty Insurance Company’s (Casualty) and American States Insurance Company’s (American States) alleged wrongful refusal to defend and indemnify Schal and Buck in an underlying tort action. Counts VI and VII were based on defendants Wausau Insurance Company’s (Wausau) and Great American Insurance Company’s (Great American) alleged tortious failure to settle the underlying action within their available limits of primary coverage, causing plaintiff Northbrook, an alleged excess insurer, to incur liability following a jury verdict.

Each count was based on the same underlying facts. On June 9, 1989, an accident occurred giving rise to an action in the circuit court titled 
Keegan v. Schal Associates, Inc., et. al
, No. 89 L 13702 (the Keegan action).  The 
Keegan
 action arose out of events which occurred during construction of a building at 515 North State Street in Chicago. Buck owned the site and Schal was the general contractor. Both were insured by Northbrook. 

Various parties were subsequently added to the action. The Ozark Companies, a subcontractor, was insured by Wausau. Ranken Steel and R.S. Erectors, also subcontractors, were insured by Great American. Alcan-United Forming, a subcontractor, was insured by American States. Buck and Schal were made additional insureds on each of these subcontractors’ policies. 

Schal and Buck tendered their defense in the 
Keegan
 action to each of the subcontractors insurers, defendants Wausau, Great American, Casualty and American States. Wausau and Great American accepted the tender. Casualty initially acknowledged its defense obligation, but withdrew before trial. American States denied the tender.

According to the plaintiffs’ complaint, Wausau evaluated the “verdict potential” of the 
Keegan
 action at over $2 million. It refused, however, to contribute its policy limit of $1 million toward a proposed total settlement of $2 million. Great American was also alleged to have had an opportunity to contribute its $1 million policy limit toward a proposal to settle the case, but declined to do so.

A jury verdict of $2,892,500 was returned in Keegan’s favor and judgment was entered thereon. Wausau contributed $1,049,583 and Great American contributed $1,000,000. Northbrook contributed the remaining $842,916.67. Casualty and American States paid nothing.

Plaintiffs subsequently brought their action recover the $842,916.67 paid by Northbrook, as well as other declaratory relief. Only counts I, V, VI and VII are at issue in this appeal.

In count I, Schal and Buck alleged that American States and Casualty were contractually obligated to indemnify them up to their respective policy limits for all amounts assessed as damages against Schal and Buck in the underlying action, but that Casualty and American States had wrongfully refused to make any payment in accordance with the provisions of the respective policies. Schal and Buck requested that the court find and adjudge that Casualty and American States had breached their contracts with Schal and Buck for all amounts that Northbrook paid in settlement of the underlying action.

In Count V, brought by all three plaintiffs, it was alleged that Casualty’s and American States’ refusal to indemnify the plaintiffs was vexatious and unreasonable under the terms of section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 1994)).

Counts VI and VII, brought by Northbrook and Schal against Wausau and Great American, alleged that Wausau and Great American negligently failed to settle the underlying action by contributing a sum of money less than their respective policy limits towards a proposed $2 million settlement; that by refusing to settle, the named defendants exposed Schal, Buck and Northbrook to a verdict in excess of the primary policy limits; and that this caused Northbrook to incur $842,916.67 in damages which it paid in satisfaction of the judgment. The plaintiffs further alleged that Schal was forced to incur an $842,916.67 reduction in the aggregate limits of its Northbrook policy as a result of that payment. Schal and Northbrook in count VI sought a judgment in their favor in the full amount paid in settlement of the underlying action and subsequent reduction of the aggregate limit under the Northbrook policy, whereas count VII alleged that the refusal of Great American and Wausau to settle within the $1 million limits of their respective primary policies was in bad faith.

All defendants filed motions to dismiss the case pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 1994)). On April 10, 1996, the trial court granted American States’ and Casualty’s Motion for Judgment on the Pleadings as to counts I and V. The court also granted Wausau’s and Great American’s motion to dismiss counts VI and VII of the complaint with prejudice. The court stayed counts II, III and IV pending resolution of the appeal of the 
Keegan
 action. Finally, the court made a finding that its rulings on Counts I, V, VI and VII was immediately appealable pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)).

Plaintiffs thereafter filed a motion asking the court to reconsider its rulings. Included with that motion was an amended complaint. On August 2, 1996, the trial court denied the motion, but modified its prior ruling, 
sua sponte, 
such that the dismissal of counts I and V was made “without prejudice” as to Schal and Buck, and the dismissal of counts VI and VII was entered “without prejudice” as to Schal. The dismissal of counts VI and VII remained with prejudice as to Northbrook. In so ruling, the trial court reasoned that Schal and Buck had no standing to bring an action against the defendants in that their excess insurer, Northbrook, had fully satisfied the 
Keegan
 judgment. The court also ruled against Northbrook in finding no duty running from a primary insurer to its insured’s excess insurer. The court found that it was unnecessary to consider the amended complaint as its rulings had rendered any proposed amendment, which simply added more detailed factual allegations, to be “moot.” Plaintiffs filed their notice of appeal from the April 10, 1996 and August 2, 1996 orders on August 13, 1996.

“WITHOUT PREJUDICE”

Defendants Casualty and American States initially challenge Schal’s and Buck’s standing to bring counts I and V. They argue this court does not have jurisdiction to consider Schal’s and Buck’s claims with respect to these counts because, even though the court made a specific finding that its decision to dismiss counts I, V, VI and VII were “final and appealable,” the court also made a specific written finding that the rulings with regard to Schal and Buck were entered “without prejudice.” Casualty and American States argue that the “without prejudice” language necessarily means that the court’s decision on these issues was not “final.” A final judgment is a requirement for appealability under Supreme Court Rule 304(a). 
City of Evanston v. Paden
, 221 Ill. App. 3d 1003, 1006, 583 N.E.2d 47 (1991). Wausau makes the same claim with regard to the court’s dismissal “without prejudice” of Schal’s count VI and VII.

The record shows that the trial court’s decision to dismiss several of the counts “without prejudice” resulted solely from its determination that Schal and Buck could not allege that they had suffered any legally cognizable damages, in that they had also alleged that their excess carrier, Northbrook, had fully paid the judgment against them. The court changed its ruling to being “without prejudice” only when it was pointed out that the Northbrook excess policy limit had been reduced by Northbrook’s payment on the judgment, meaning that should either Schal or Buck need to make additional claims on the Northbrook policy, the coverage available under that policy would be reduced. The court reasoned that although Schal and Buck could not claim to have suffered “damages” after the judgment in the 
Keegan
 action had been paid, a subsequent claim on the policy could exhaust the policy limitation, in which case Schal and Buck would have suffered the requisite harm.

In 
Boonstra v. City of Chicago
, 214 Ill. App. 3d 379, 574 N.E.2d 689 (1991) this court stated:

“The appealability of an order is determined by its substance rather than its form.  Where a dismissal is based upon a determination that the complaint is not sufficient to state a cause of action, the order is final and appealable by its nature.  Thus, an order of dismissal for failure to state a cause of action which is not followed by a request to amend is a final, appealable order and does not require a specific declaration by the plaintiff that he wishes to stand on the complaint.  In addition, an order is not deprived of finality merely because it does not include the 

words "with prejudice." [Citation.]” 
Boonstra
, 214 Ill. App. 3d at 385.

Other decisions have similarly concluded that it is the substance of the trial court’s order which determines whether it is final, not whether the court has used any particular language. See e.g., 
In re Estate of Hopkins
, 214 Ill. App. 3d 427, 574 N.E.2d 230 (1991); 
Schuster Equipment Co. v. Design Electric Services
, 197 Ill. App. 3d 566, 554 N.E.2d 1097 (1990).

Because the effect of a dismissal order is determined by its substance, and not by the incantation of any particular magic words, a trial court’s description of a final judgment as being “without prejudice” is of no greater logical effect than a trial court’s statement that a non-final dismissal judgment is “with prejudice.” In each instance, whether the trial court’s dismissal order is final (and thereby appealable under Rule 304(a)) or is not final (and, therefore, not appealable) is a function not of its words, but of its effect.  Thus, if the dismissal is because of a deficiency which could be cured by simple technical amendment, the order is not the subject of appeal. On the other hand, if the dismissal is because, as here, of a perceived substantive legal deficiency (e.g. that the plaintiffs have not sustained damages as a matter of law and, therefore, lack standing to sue), the dismissal order is final. Accordingly, the question of whether insureds such as Schal and Buck may maintain a cause of action to recover payments owed to them under an insurance contract, but ultimately paid to them by an excess carrier, has been finally decided by the trial court. The inclusion of the words “without prejudice” in the trial court’s orders do not deprive us of jurisdiction under Supreme Court Rule 304(a).

ENTRY OF JUDGMENT AS LEGAL DAMAGES

We also conclude that an entry of judgment against Schal and Buck constitutes sufficient damages, in and of itself, to sustain the causes of action alleged. Illinios law has long taken a liberal view of the extent of damages which must be alleged in order for a plaintiff to bring a cause of action in our courts and, accordingly, has recognized that the entry of judgment against an insured constitutes sufficient damages to permit the insured to maintain an action against its primary insurer. As one court has stated, “[t]he rule of damages is that incurrence is equivalent to outlay.” 
Smiley v. Manchester Insurance and Indemnity Co. of St. Louis
, 13 Ill. App. 3d 809, 814, 301 N.E.2d 19 (1973). This is so whether or not funds are available to pay the judgment. 
Browning v. Heritage Insurance Co.
, 33 Ill. App. 3d 943, 338 N.E.2d 912 (1975);
 
Wolfberg v. Prudence Mutual Casualty Co. of Chicago
, 98 Ill. App. 2d 190, 240 N.E.2d 176 (1968). If defendants wish to argue that Schal and Buck should receive no compensation because they have been fully reimbursed by their excess carrier, they may do so at trial. 

The defendants have cited 
Ludwig Music House, Inc. v. State Farm Mutual Auto Insurance Co.
, 108 Ill. App. 2d 27, 246 N.E.2d 473 (5
th
 Dist., 1969) and 
Childress v. State Farm Mutual Automobile Insurance Co.
, 97 Ill. App. 2d 112, 239 N.E.2d 492 (1968) for the proposition that when a plaintiff is fully reimbursed by one insurer, he or she can bring no cause of action against another insurer. We note, however, that the plaintiff in 
Ludwig Music House
 did not have a judgment entered against her. This fact distinguishes that case. To the extent that 
Childress
 is inconsistent with our holding, we decline to follow it.

DIMINUTION OF INSURANCE COVERAGE AS CONSTITUTING DAMAGES

In addition to the fact that the entry of a judgment against Schal and Buck is, in and of itself, sufficient injury allow them to pursue a claim against their insurers, we note that the defendants’ actions as alleged in the complaint, if true, caused Schal and Buck the loss of  insurance protection that would have otherwise been available to them. Clearly, a policy of insurance is a valuable asset. It follows that when an excess insurer makes a payment on the insured’s behalf that would have been unnecessary had a primary insurer not acted tortiously, the primary insurer should be liable for the diminution of the insurance policy’s value.  Even assuming that Schal and Buck did not fortify their diminished Northbrook policy with additional insurance, the fact that Schal and Buck were compelled to bear additional risk of loss is, in our view, sufficient legal injury to confer standing to sue. The measure of damages which Shal and Northbrook should be awarded for this loss, if any, is a matter for the trial court to determine as a question of fact.
(footnote: 1)
 APPROPRIATENESS OF RULE 304(a) FINDINGS

Defendant Wausau raises the additional argument that we are without jurisdiction over counts VI and VII because the trial court improperly found no just reason to delay enforcement or appeal of its order. Wausau notes that such a Rule 304(a) finding is appropriate only where the finding of the trial court disposes of the rights of the parties on either the entire controversy or on some definite separate branch thereof. See 
Arachnid, Inc. v. Beall
, 210 Ill. App. 3d 1096, 569 N.E.2d 1273 (1991); 
Rice v. Burnley
, 230 Ill. App. 3d 987, 596 N.E.2d 105 (1992). To determine whether an order has disposed of a separate branch of a controversy, one looks to see if the bases of recovery of the counts which are dismissed are distinct from those that are left standing. 
Rice
, 230 Ill. App. 3d at 991. At oral argument Wausau argued that the trial court acted “improvidently” in allowing Schal and Buck to proceed on appeal because Wausau had brought counterclaims against Schal and Buck which were pending in the trial court at the time Rule 304(a) certification was granted.

Although the existence of counterclaims on the same or similar issue is, indeed, one of the factors the trial court should consider against granting Rule 304(a) relief, it is not the only consideration. See 
Waters v. Reingold
, 278 Ill. App. 3d 647, 663 N.E.2d 126 (1996)(drawing parallels between factors considered under Rule 54(b) of the Federal Rules of Civil Procedure). Instead, the decision to grant or deny Rule 304(a) relief is best left to the sound discretion of the trial court who must determine whether, in its view, allowing an immediate appeal would have the effect of expediting the resolution of the controversy, be fair to the parties and conserve judicial resources. See 
Diggs v. Suburban Medical Center
, 191 Ill. App. 3d 828, 835, 548 N.E.2d 373 (1989). The standard of review is whether the trial court abused its discretion in granting Rule 304(a) relief. After considering the proper standard of review, we find no abuse of the court’s discretion.

PRIMARY INSURER’S DUTY OF GOOD FAITH TOWARD AN EXCESS CARRIER

Having determined that Schal and Buck have alleged sufficient legal injury to avoid dismissal on section 2-615 grounds, and that the trial court did not abuse its discretion in certifying this appeal under Supreme Court Rule 304(a), we turn to Northbrook’s claim that it has alleged a viable cause of action in counts VI and VII. Northbrook claimed in its complaint that Wausau and Great American owed a duty to Schal to settle the 
Keegan
 action within their respective policy limits, and that Northbrook is thereby entitled to bring a cause of action against Wausau and Great American under subordination principles. The trial court found no such cause of action existed in Illinois in dismissing VI and VII. Northbrook maintains that it may maintain a cause of action against Wausau and Great American for an alleged breach of a “duty to settle” the 
Keegan
 action within the primary policy limits when given the opportunity to do so because it paid the excess portion of the 
Keegan
 judgment on behalf of Schal.

A motion to dismiss pursuant to section 2-615 "challenges only the legal sufficiency of the complaint and admits the truth of all well-pleaded factual allegations." 
Anderson v. Vanden Dorpel
, 172 Ill. 2d 399, 407, 667 N.E.2d 1296 (1996). Under a section 2-615 motion, the question is whether the complaint alleges sufficient facts entitling plaintiff to relief.  
Bryson v. News America Publications Inc.
, 174 Ill. 2d 77, 86, 672 N.E.2d 1207 (1996). The trial court's decision to grant section 2-615 relief is made as a matter of law. Consequently, our review is 
de novo
. 
Cree Development Corp. v. Mid-America Advertising Co.
, 294 Ill. App. 3d 324, 329-30, 689 N.E.2d 1148 (1997).

Counts VI and VII of plaintiffs’ complaint allege that (1) Wausau and Great American owed a duty to Northbrook and Schal to act reasonably in settling a claim within their respective policy limits, (2) Wausau and Great America breached that duty by failing to contribute a sum equal their policy limits to a proposed settlement of $2 million and (3) Wausau’s and Great American’s negligent and/or bad faith conduct proximately caused damages in the amount of $842,916.67, the amount paid in excess of the primary policy limits, which Northbrook paid on Schal’s and Buck’s behalf. 

The trial court determined that these allegations, even if sufficiently pled, would not establish a valid claim because, under Illinois law, a primary insurer has no duty toward an excess carrier. We reject the trial court’s conclusion, however, since an excess insurer is subrogated to the rights of its insured’s primary carrier when forced to pay a claim. 
Aetna Casualty & Surety Co. v. Coronet Insurance Co.
, 44 Ill. App. 3d 744, 358 N.E.2d 914 (1976). See also 
Ranger Insurance Co. v. The Home Indemnity Co.
, 714 F. Supp. 956 (N.D. Ill. 1989); 
California Union Insurance Co. v. Liberty Mutual Insurance Co.
, 920 F. Supp. 908, 918-19 (N.D. Ill. 1996) (predicting that Illinois state courts would permit an action by an excess insurer against a primary insurer for tortious failure to settle within the primary policy limits based upon equitable subrogation). Because an insured in Illinois may bring a cause of action against its carrier for negligent or bad faith refusal to settle (see 
Cramer v. Insurance Exchange Agency
, 174 Ill. 2d 513, 675 N.E.2d 897 (1996); 
Scroggins v. Allstate Insurance Co.
, 74 Ill. App. 3d 1027, 393 N.E.2d 718 (1979); 
Smiley v. Manchester Insurance and Indeminty Co. of St. Louis
, 13 Ill. App. 3d 809, 301 N.E.2d 19 (1973)), it follows logically that an excess carrier must be allowed to bring a similar cause of action against its insured’s primary carrier. This is because, by purchasing excess coverage, the insured has effectively substituted the excess insurer for itself. Cf. 
Hartford Accident & Indemnity Co.
, 164 Ariz.2d 286, 792 P.2d 749 (1990). 

Moreover, even absent subrogation principles, we find that there is a duty which runs from Wausau and Great American to Northbrook to act reasonably and in good faith in attempting to settle claims within their respective policy limits. The leading case finding such a duty is 
Transit Casualty Co. v. Spink Co.
, 94 Cal.App.3d 124, 156 Cal.Rptr. 360 (3
rd
 Dist., 1979), which recognized a three-way relationship between the policyholder, the primary insurer and the excess insurer. This relationship creates reciprocal duties of care in the conduct of settlement negotiations; when a claim threatens to exceed the primary coverage, the reasonable foreseeability that the claim may reach the excess policy creates a three-way duty of care to act reasonably and in good faith in settling meritorious claims within the policy limits. The insured, primary carrier and excess carriers must therefore act reasonably and in good faith towards one another in considering the others’ interests in negotiating a settlement. 
Transit Casualty Co.
, 156 Cal. Rptr at 366. Our decision in this regard cannot be characterized as surprising in that several other jurisdictions have followed 
Transit Casualty Co.
  and have recognized such a duty (see 
e.g.,
 
Hartford Accident & Indemnity Co. v. Michigan Mutual Insurance Co.
, 61 N.Y.2d 569, 574, 463 N.E.2d 608, 475 N.Y.S.2d 267 (1984); 
Estate of Penn v. Amalgamated General Agencies
, 148 N.J.Super. 419, 424, 372 A.2d 1124, 1127 (1977); 
Vencil v. Continental Casualty Co.
, 433 F.Supp. 1371 (S.D. W. Va. 1977)). Additionally, while federal courts do not bind our State courts in such matters, we note that at least two federal decisions have predicted that Illinois would recognize such a duty. 
American Centennial Insurance Co. v. American Home Insurance Co.
, 729 F. Supp. 1228, 1231-32 (N.D. Ill. 1990)
; 
Ranger Insurance Co. v. The Home Indemnity Co.
, 714 F. Supp. 956 (N.D. Ill. 1989).

Great American, in arguing against the imposition of a duty upon primary insurers to settle claims within their policy limits when it is reasonable to do so, claims that excess carriers include within their costs of doing business the possibility that a primary carrier might not settle a claim in good faith when given the opportunity at or near the policy limitation simply because there is no profit in doing so. The risk of this, according to Great American, is simply one of the costs associated with the “profitable excess insurance business.” Even if this were so, however, which we doubt, we do not believe it is in the public interest to permit primary carriers to negligently or in bad faith refuse to settle claims. The recognition in Illinois of a cause of action by the excess carrier against the primary carrier promotes judicial economy because it has the effect of encouraging fair and reasonable settlements. In weighing the likelihood of injury to the excess carrier, the magnitude of the burden of guarding against that injury, and the consequences of placing the burden of negotiating in good faith upon a primary insurer, we find that the duty suggested by the plaintiffs exists in Illinois. See 
Kirk v. Michael Reese Hospital Center
, 117 Ill. 2d 507, 513 N.E.2d 387 (1987) (discussing relevant factors in determining whether legal duty exists).  Otherwise, as plaintiffs have argued, a primary insurer would have no incentive to enter into a reasonable settlement of the case when its expected liability approaches the limits of its policy. A cause of action in favor of the excess carrier is therefore in the public interest as the settlement of good-faith disputes at or near the amount of an expected judgment will be promoted, with the consequence of less litigation over disputes that should not logically be litigated, as well as the result of lower insurance premiums for excess coverage.

ALLEGED PLEADING DEFECTS

We next address Great American’s argument that we should affirm the trial court’s dismissal of Northbrook’s and Schal’s counts VI and VII because those counts failed to allege facts giving rise to a duty to settle. In addition, Great American argues that count VII of the complaint failed to allege facts giving rise to a cause of action for bad faith. 

Initially, Great American claims the complaint alleges no facts concerning the likelihood of a finding of liability in the 
Keegan
 action, and no facts indicating that the amount of the probable recovery in that action would exceed the total coverage available to Schal to settle the case.  It argues that, although the trial court did not dismiss plaintiffs’ complaints on this ground, a reviewing court should affirm the dismissal of a complaint on any legally valid grounds appearing in the record, citing 
Beckman v. Freeman United Coal Mining Co.
, 123 Ill. 2d 281, 527 N.E.2d 303 (1988).

We agree that the initial complaint has failed to allege a duty on the part of Wausau and Great American to settle. The complaint emphasized that Wausau evaluated the 
verdict potential
 of the 
Keegan
 case at more than $2 million, and that Great American had the opportunity to settle for less than its $1 million limit. Without any allegation as to the likelihood of a finding of liability, however, the evaluation of potential damages is meaningless. This is because even if the case had a verdict potential of $3 million, the parties should not be expected to settle the case for $2 million if the party claiming injury had only a 5% chance of prevailing on liability. It is the 
expected liability
 that a defendant and/or its carrier must assess in deciding whether it is reasonable to go to trial or whether settlement should be pursued. The allegation that the verdict potential of the 
Keegan
 action was $2 million would be sufficient only if insurers were subject to strict liability for excess judgments, which they are clearly not. 

Great American also argues that we should reject plaintiffs’ counts VI and VII because they failed to allege that the total amount of available primary coverage was insufficient to reimburse Schal and Northbrook for the costs of satisfying the 
Keegan
 judgment. Great American notes that plaintiffs’ complaint alleged that there were four primary carriers which had written primary coverage which, together, would have covered the entire liability plaintiffs had incurred in the 
Keegan
 action. They claim it would be unfair to require a primary insurer to anticipate that one of its co-insurer’s might fail to meet its coverage obligations prior to judgment, so that it should be necessary for a plaintiff who wishes to bring a cause of action such as that suggested to allege that the total amount of primary coverage was known to the defendant to be insufficient. Thus, they argue that even if there is a duty on a primary carrier to give consideration to an excess carrier’s potential exposure, that duty is not triggered if there is sufficient primary coverage from other insurers to fully satisfy the judgment. 

We reject Great American’s contention in this regard. Our holding today only requires that a primary insurer estimate in good faith the expected verdict of the litigation threatening its insured and offer that amount in support a proposed settlement -- at least to the extent consistent with the terms of its policy. The existence of other insurance is simply not relevant to the primary insurer’s duty to offer its support to a settlement when it is reasonable to do so. 

Lastly, Great American argues that the Schal and Northbrook have failed to allege facts in counts VI and  VII giving rise to a claim for negligence or bad faith. Illinois is a fact pleading state in which plaintiffs are required to set out facts giving rise to their causes of action. 
Teter v. Clemens
, 112 Ill. 2d 252, 492 N.E.2d 1340 (1986). Although well-pleaded facts are taken as true for the purposes of a motion to dismiss, plaintiffs must allege facts supporting all of the elements of their claims; notice pleading, conclusions of law, and conclusions of fact are insufficient. 
Knox College v. Celotex Corp.
, 88 Ill. 2d 407, 430 N.E.2d 976 (1981). 

A complaint for bad faith sounds in tort, and is subject to all of the requirements of a traditional negligence complaint. See 
Adduci v. Vigilant Insurance Co.
, 98 Ill. App. 3d 472, 424 N.E.2d 645 (1981). In general, the law does not impose a duty on insurance companies to settle case within policy limits, and the fact that the company is unsuccessful in the trial of a particular case does not show bad faith; the duty to settle arises only where the probability of an adverse finding on liability is great, and where the amount of the probable recovery would greatly exceed coverage. 
Kavanaugh v. Interstate First & Casualty Co.
, 35 Ill. App. 3d 350, 342 N.E.2d 116 (1976). 

In alleging negligence, Schal and Northbrook made the following conclusionary claim:

“Wausau and Great American breached said duty by refusing to effect such a settlement and, by negligently doing so, exposed Schal and Buck and the Northbrook policy to a verdict in excess of the primary policy limits.”

The count alleging “bad faith,” as opposed to “negligence,” merely substituted the word “knowingly” for the word “negligently.” Courts routinely find such type of  conclusionary characterizations as being insufficient. See 
Adkins v. Sarah Bush Lincoln Health Center
, 129 Ill. 2d 497, 518-19, 547 N.E.2d 733 (1989) (facts alleged do not rise to wilful and wanton misconduct); 
Teter
, 112 Ill. 2d at 258 (facts failed to show how grandparents were negligent in allowing grandchild to come into possession of a pellet gun); 
Knox College
, 88 Ill. 2d at 427-28 (facts alleged do not show with sufficient specificity how defendant breached contract). 

There are abundant examples in the case law of facts giving rise to breach of duty similar to the one plaintiffs have attempted to allege: refusal to reveal policy limits, refusal to negotiate, rejection of the recommendation of the insured’s attorney regarding settlement, and failure to advise the insured of settlement negotiations, to name a few. See 
Mid-American Bank & Trust Co. v. Commercial Union Insurance Co.
, 224 Ill. App. 3d 1083, 587 N.E.2d 81 (1992); 
Smiley v. Manchester Insurance & Indemnity Co.
, 13 Ill. App. 3d 809, 301 N.E.2d 19 (1973); 
Cernocky v. Indemnity Insurance Co.
, 69 Ill. App. 2d 196, 216 N.E.2d 198 (1966). No such facts were alleged in the complaint here at issue. Accordingly, we agree that plaintiffs’ complaint failed to allege sufficient facts to make out the cause of action alleged.

Finally, although we agree with Great American that the plaintiffs’ complaint was factually insufficient, we disagree with Great American that these defects require that we affirm the trial court’s dismissal 
with prejudice
. In 
Beckman
, the supreme court affirmed the trial court and remanded the case with directions that the cause be dismissed with prejudice because the court determined that the plaintiff could not, on remand, allege facts which would sustain the cause of action alleged. 
Beckman
, 123 Ill. 2d at 288. Unlike in 
Beckman
, we cannot say that if plaintiffs were given the fair opportunity to do so, they could never make out factual allegations which, if proved, would establish negligence or bad faith on the part of Great American and Wausau in refusing to settle the 
Keegan
 action. Neither can we assume that the trial court denied amendment of the complaint as a matter of discretion, as the court expressly declined to even consider plaintiffs’ first attempt to amend. Cf. 
Teter
, 112 Ill. 2d at 260-61. Accordingly, we decline to follow Great American’s invitation to affirm the trial court in alternative grounds. Instead, we remand the case for further proceedings as is consistent with this opinion..

In sum, we hold that the plaintiffs Schal and Buck have alleged sufficient injury to confer standing to sue, despite the trial court’s order which stated that Schal’s and Buck’s claims were dismissed “without prejudice.”  In addition, we find that plaintiffs have alleged a legally sufficient cause of action in claiming that defendants Great American and Wausau, either negligently or unreasonably and in bad faith, refused to offer to pay their respective policy limits toward the settlement of the case. We agree, however, that the original complaint, as filed, failed to make sufficient factual allegations requiring Great American and Wausau to offer to settle the 
Keegan
 action in that the complaint did not (1) allege that the estimated expected value of the 
Keegan
 judgment exceeded the respective defendant’s policy limits, and (2) allege sufficient facts showing how Great American and Wausau were negligent or acted in bad faith. Because the trial court dismissed the counts at issue on specific grounds unrelated to this pleading defects and failed to consider plaintiffs’ amended complaint, we reverse the trial court’s orders and remand the matter with instructions to allow plaintiffs to amend. 

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the case is remanded with instructions.

REVERSED AND REMANDED WITH INSTRUCTIONS.

CAMPBELL, P.J. and QUINN, J., concur.

FOOTNOTES
1:     
 The issue of how best to compensate Schal and Buck should they prove their case at trial is not a simple one. Schal and Buck argue that Great American and Wausau should make compensation to them by making payment of the entire amount Northbrook paid on Schal’s and Buck’s behalf in the 
Keegan
 action, $842,916.67. Northbrook, plaintiffs claim, would then have a lien on these funds and the ultimate payment to Northbrook of this money by Schal and Buck would have the effect of resetting the limitation on the Northbrook excess policy. We note, however, that Schal and Buck might be more directly compensated for their loss of coverage, assuming no additional claims were made on the policy and that it has since expired, by simply paying to them the 
pro
 
rata
 share of whatever policy premiums were paid to Northbrook for the excess coverage.