# Illinois Official Reports

## Appellate Court

***Ruiz v. Cal-Ful Condominium Ass'n*, 2019 IL App (1st) 181734**

| | |
|---|---|
| Appellate Court Caption | GONZALO RUIZ and DINA RUIZ, Plaintiffs-Appellants, v. CAL-FUL CONDOMINIUM ASSOCATION, an Illinois Not-for-Profit Corporation; CALIFORNIA COMMONS RESIDENTIAL CONDOMINIUM ASSOCIATION, an Illinois Not-for-Profit Dissolved Corporation; MARIA ARCOS; RACHEL OWENS; and OMAR R. CASTRO, Defendants (Cal-Ful Condominium Association, Maria Arcos, Rachel Owens, and Omar R. Castro, Defendants-Appellees). |
| District & No. | First District Sixth Division<br>No. 1-18-1734 |
| Filed<br>Rehearing denied | September 20, 2019<br>October 18, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CH-20579; the Hon. Anna H. Demacopoulos, Judge, presiding. |
| Judgment | Affirmed in part, reversed in part, and remanded. |
| Counsel on Appeal | Marty Schwartz and Tyler Manic, of Schain, Banks, Kenny & Schwartz, of Chicago, for appellants.<br><br>David T. Brown and Lucas Sun, of Kaufman Dolowich & Voluck, LLP, of Chicago, for appellees. |

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.
Justices Connors and Harris concurred in the judgment and opinion.


**OPINION**

¶ 1      This case arises out of a dispute between two condominium unit owners and the condominium board of directors regarding the directors' exercise of their fiduciary duty. Plaintiffs-appellants Gonzalo and Dina Ruiz, the unit owners, appeal the circuit court of Cook County's dismissal of certain counts of their complaint against defendant-appellee Cal-Ful Condominium Association and the court's entry of summary judgment in favor of codefendants-appellees Maria Arcos, Rachel Owens, and Omar R. Castro, members of the condominium board of directors.

¶ 2      On appeal, the Ruizes argue that the court erred in granting summary judgment for the directors based on the directors' defense of equitable estoppel. The Ruizes further argue that the court erred in dismissing count II of their complaint, seeking attorney fees from the Cal-Ful Condominium Association for the failure to state a claim.

¶ 3      Finding that the Ruizes were not estopped from bringing their breach of fiduciary duty claim as a matter of law, but that they did not state a claim for attorney fees, we affirm the circuit court of Cook County in part, reverse in part, and remand for further proceedings.


¶ 4                             I. BACKGROUND

¶ 5      The following facts are taken from the Ruizes' third amended complaint. Gonzalo purchased the buildings located at 2353-63 North California Avenue and 2757 West Fullerton Avenue in Chicago in 1985. In 1994, Gonzalo, as the developer, converted the buildings into two condominium associations, one commercial and one residential. The commercial association had 3 units, while the residential association had 10. In December 1994, the Ruizes recorded declarations identifying California Commons Commercial Condominiums (CCC) and California Commons Residential Condominiums (CCR) as the associations for the commercial and residential properties, respectively. (CCR was incorporated; CCC was not.) The Ruizes were the beneficiaries of a land trust that owned the three commercial units.

¶ 6      In 2001, CCR was involuntarily dissolved for failing to file annual reports with the Illinois Secretary of State. Rather than reinstate the dissolved association, the Ruizes incorporated the Cal-Full Condominium Association[1] (CFCA). On paper, CFCA served as the association only for the residential condominiums, while CCC served as the association for the commercial units. In practice, however, CFCA acted as an association for both the residential and commercial units in the following ways: (1) there was only one board of directors for both associations, and unit owners voted for directors without distinguishing between the two associations, (2) the associations did not have separate unit owner meetings, (3) the associations shared a budget and bank accounts, (4) the directors collected and commingled

---

[1]"Cal-Full" is alternately spelled "Cal-Ful."

assessments from the owners of both the residential and commercial units, and (5) there was one insurance policy for the building.

¶ 7　　Gonzalo served on the board of directors of CFCA until 2006. In 2007, Maria Arcos, Rachel Owens, and Omar R. Castro (collectively, directors) joined the board of directors and remained on the board until 2014. All three owned residential units in the building.

¶ 8　　In 2007, the Ruizes altered the first page of the 1994 CCR declaration, which was originally captioned "The California Commons Residential Condominiums" to read "The Cal/Ful Condominiums Association, Residential and Commercial." The Ruizes recorded the 2007 declaration with the recorder of deeds against the commercial units. Significantly, none of the substantive terms of the 1994 CCR declaration were changed; the legal description of the property in the 2007 declaration includes only a description of the residential units. According to the Ruizes, they made this alteration to comply with certain requirements promulgated by the United States Department of Housing and Urban Development, so that it would continue to provide mortgage loans to residential condominium purchasers at the building.

¶ 9　　Also in 2007, Gonzalo asked Arcos to distribute a notice to all unit owners that referred to the "California Fullerton Condominium Association" as including "13 condominiums of which 10 are residential and 3 are commercial."

¶ 10　　Based on the 2007 notice and declaration as well as the Ruizes' own representations, the directors managed, controlled, and made expenditures for both the commercial and residential associations between 2007 and 2014. In other words, they believed the association of which they were directors—CFCA—governed both the commercial and residential units.

¶ 11　　In January 2011, a fire occurred, causing damage to both commercial and residential units in the buildings. As noted *supra* ¶ 6, both the residential and commercial units shared a single policy of property insurance issued by Travelers Insurance Company of America (Travelers). In February 2012, Travelers provided the directors with an estimate of damages that it would cover for the loss under the policy. That estimate allocated $51,500 to repair the damages to the common elements of the commercial units. The directors approved the estimate and agreed to settle the claim for that amount. Shortly after the fire, the directors authorized the demolition of the commercial units.

¶ 12　　This litigation commenced in September 2013, when Gonzalo filed his first complaint against only "Cal-Full Condominium Association," seeking to compel the production of books and records. In both his first complaint and his verified amended complaint, filed in August 2014, Gonzalo asserted that the "Cal-Full Condominium Association" was governed by the 2007 declaration. It was not until the filing of his second amended complaint in August 2015 that Gonzalo acknowledged that there were two condominium associations, although he continued to maintain that they operated as one entity. Also in the verified second amended complaint, Gonzalo named CCR and the directors as defendants for the first time in addition to CFCA.

¶ 13　　At the same time, the directors learned through their management company that there were two associations for the building. They allowed CFCA to dissolve in 2015 and reinstated CCR, which is the successor in interest to CFCA.

¶ 14    In their third amended complaint filed in October 2016, at issue here, the Ruizes raised six counts.[2] Counts I, V, and VI were dismissed and are not part of this appeal. Count II sought attorney fees from CFCA and CCR for failing to produce certain books and records pursuant to section 19 of the Condominium Property Act (Act). 765 ILCS 605/19 (West 2016). Counts III and IV alleged breach of fiduciary duty by the directors for settling with Travelers for $51,500 and authorizing the demolition of the commercial units. Specifically, the Ruizes alleged that the amount offered by Travelers to repair the commercial units was grossly inadequate and the directors breached their fiduciary duty by accepting it. Further, they alleged that the directors failed to provide the Ruizes with the entire $51,500 to repair the units. With regard to the demolition, the Ruizes alleged that it was a breach of fiduciary duty for the directors to authorize the demolition of the commercial units prior to investigating whether the demolition was necessary, obtaining the Ruizes' permission, or verifying that the insurance policy would cover the cost of repair and replacement.

¶ 15    In November 2016, the defendants moved to dismiss the complaint pursuant to section 2-615 of the Code of Civil Procedure. 735 ILCS 5/2-615 (West 2016). The court granted the motion as to counts II, V, and VI in February 2017. (The Ruizes voluntarily dismissed count I.) With regard to count II, the court found that the Ruizes had not adequately pled bad faith as required to sustain an action for attorney fees pursuant to section 19(e) of the Act. 765 ILCS 605/19(e) (West 2016).

¶ 16    One year later, in November 2017, the directors moved for partial summary judgment on counts III and IV of the complaint on the basis that the Ruizes were equitably estopped from asserting a breach of fiduciary duty. (The circuit court permitted the directors to reserve all other defenses.) Following a hearing in February 2018, the court granted the directors' motion. The court concluded that equitable estoppel applied as a matter of law, noting that the Ruizes knowingly and fraudulently misled the directors into believing there was one association governing the commercial and residential units and requiring them to act as fiduciaries for the commercial association. The court further found that the directors would be prejudiced if the Ruizes were allowed to deny the truth that there were two associations and that the directors had no obligation to assume fiduciary responsibilities for the commercial units.

¶ 17    The court denied the Ruizes' motion for reconsideration in June 2018, and the Ruizes timely appealed from the circuit court's dismissal of count II of their complaint and the court's entry of summary judgment in favor of the directors on counts III and IV.

¶ 18                                   II. ANALYSIS

¶ 19    We note that we have jurisdiction to review this matter, as the Ruizes filed a timely notice of appeal following the denial of their motion for reconsideration. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. July 1, 2017).

¶ 20    We turn first to the Ruizes' challenge to the court's entry of summary judgment in favor of the directors. Summary judgment is appropriate only when " 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 20 (quoting 735

---

[2]Gonzalo added Dina as a plaintiff for the first time in the third amended complaint without leave of court. The defendants maintain they have reserved their rights on this issue.

ILCS 5/2-1005(c) (West 2008)). All supporting materials are strictly construed against the movant and in favor of the opposing party. *Mashal v. City of Chicago*, 2012 IL 112341, ¶ 49. We review *de novo* an order granting summary judgment. *Nationwide Financial, LP v. Pobuda*, 2014 IL 116717, ¶ 24.

¶ 21    The directors' motion for summary judgment was based entirely on the theory that the Ruizes were equitably estopped, as a matter of law, from claiming a breach of fiduciary duty. In order to raise a successful defense of equitable estoppel, the party claiming estoppel must show (1) the other party misrepresented or concealed material facts, (2) the other party knew, at the time the representations were made, that those representations were false, (3) the party claiming estoppel did not know of the falsity of the representations when they were made or when they were acted upon, (4) the other party intended or reasonably expected the representations to be acted upon by the party claiming estoppel, (5) the party claiming estoppel reasonably relied upon the representations in good faith to his detriment, and (6) the party claiming estoppel has been prejudiced by his reliance on the representations. *In re Parentage of Scarlett Z.-D.*, 2015 IL 117904, ¶ 25. Succinctly stated,

> "where a person by his or her statements and conduct leads a party to do something that the party would not have done but for such statements and conduct, that person will not be allowed to deny his or her words or acts to the damage of the other party." *Geddes v. Mill Creek Country Club, Inc.*, 196 Ill. 2d 302, 313 (2001).

¶ 22    We agree with the Ruizes that equitable estoppel has no application to this case. Fundamentally, the Ruizes are not repudiating the fact that they told the directors that one association governed both the commercial and residential units in the building. They admit in their pleading that in practice, if not in fact, the building was governed by a single association. A basic precept of estoppel is that a party may not deny the effect of his conduct or representation if to do so would cause prejudice to the party claiming estoppel. See *Scarlett Z.-D.*, 2015 IL 117904, ¶ 25. The directors here do not point to any denial or repudiation by the Ruizes.

¶ 23    Significantly, the Ruizes do not allege that the directors should not have exercised their fiduciary duty on behalf of the commercial units. To the contrary, they accept that their actions induced the directors to act as fiduciaries. Their lawsuit is based on the allegation that the directors *breached* that duty. Needless to say, the directors' reliance on the Ruizes' representations did not lead them to (allegedly) breach their fiduciary duties; it led them only to exercise those duties in the first place. And contrary to the directors' contention, they suffered no detriment merely from undertaking those fiduciary duties.[3]  For these reasons, we conclude that the trial court erred in applying equitable estoppel to bar the Ruizes from proceeding on their causes of action for breach of fiduciary duty. We therefore reverse the entry of summary judgment in favor of the directors.

¶ 24    We turn next to the Ruizes' challenge to the trial court's dismissal of count II of their complaint. A motion to dismiss pursuant to section 2-615 tests the legal sufficiency of a complaint based on defects apparent on its face. *Simpkins v. CSX Transportation, Inc.*, 2012 IL 110662, ¶ 13. The court must accept as true all well-pleaded facts as well as all reasonable

---

[3]At oral argument, counsel for the directors maintained that that assuming fiduciary responsibilities for the commercial, as well as the residential units, subjected the directors to an increased risk of suit, but this is too speculative to qualify as a legal detriment.

inferences drawn from those facts. *Id.* Our review of a trial court's order granting or denying a 2-615 motion is *de novo*. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31.

¶ 25    Here, the trial court dismissed the Ruizes' claim seeking attorney fees for the association's alleged failure to produce "books and records" based on its finding that the Ruizes failed to allege bad faith pursuant to section 19(e) of the Act. 765 ILCS 605/19(e) (West 2016).

¶ 26    The parties initially dispute which version of the Act applies. Prior to 2018, the Act provided, in relevant part, that a party who prevailed in an enforcement action to compel examination of, among other things, books and records of account, was not entitled to attorney fees unless the court found that the directors of the association acted in bad faith. 765 ILCS 605/19(e) (West 2016). In January 2018, the Act was amended to exclude "books and records" from the bad faith requirement (*i.e.*, a party seeking attorney fees for an association's failure to produce books and records no longer needs to prove the directors acted in bad faith in failing to make those documents available). 765 ILCS 605/19(e) (West 2018). The Ruizes urge us to hold that the 2018 version of the Act applies, while the association maintains that the earlier version is applicable.

¶ 27    Determining whether a current or prior version of a statute is applicable to a cause of action ordinarily requires a retroactivity analysis as set forth in *Commonwealth Edison Co. v. Will County Collector*, 196 Ill. 2d 27, 38 (2001). Here, however, the Ruizes do not argue that the 2018 Act is applicable retroactively to 2016, when they filed their third amended complaint. Rather, the Ruizes argue that the association's conduct giving rise to their claim is ongoing and therefore the most current version of the Act applies. We find no merit to this contention.

¶ 28    In their third amended complaint, the Ruizes did not seek the production of the missing records, but only attorney fees for the association's past failure to produce them. And that failure occurred in 2013, when Gonzalo made his initial request. While the association may have persisted in its failure to produce the books and records—an allegation that finds limited support in the record—this was not the basis for the Ruizes' claim so as to establish an ongoing violation of the Act. Accordingly, we find that the earlier version of the Act is applicable.

¶ 29    Having determined that the pre-2018 Act is applicable to the Ruizes' cause of action, we turn to the merits of the circuit court's decision dismissing count II. It is necessary to begin by setting forth the documents the Act requires the board of directors to "keep and maintain":

> "(1) the association's declaration, bylaws, and plats of survey, and all amendments of these;
>
> (2) the rules and regulations of the association, if any;
>
> (3) if the association is incorporated as a corporation, the articles of incorporation of the association and all amendments to the articles of incorporation;
>
> (4) minutes of all meetings of the association and its board of managers for the immediately preceding 7 years;
>
> (5) all current policies of insurance of the association;
>
> (6) all contracts, leases, and other agreements then in effect to which the association is a party or under which the association or the unit owners have obligations or liabilities;
>
> (7) a current listing of the names, addresses, and weighted vote of all members entitled to vote;

(8) ballots and proxies related to ballots for all matters voted on by the members of the association during the immediately preceding 12 months, including but not limited to the election of members of the board of managers; and

(9) the books and records of account for the association's current and 10 immediately preceding fiscal years, including but not limited to itemized and detailed records of all receipts and expenditures." 765 ILCS 605/19(a) (West 2016).

¶ 30　　The Act provides that attorney fees are available for any member of the association who prevails in an enforcement action to compel examination of the records described in subsubsections (1) through (5). 765 ILCS 605/19(b) (West 2016). With respect to the documents described in subsubsections (6) through (9), the Act also permits recovery of attorney fees, but only upon a court finding that the directors acted in bad faith in denying the member's request for the documents. 765 ILCS 605/19(e) (West 2016).

¶ 31　　In his demand letter of 2013, Gonzalo expressed concern for the deteriorating condition of the condominium and sought to determine whether there was "waste, mismanagement, or dissipation" of financial resources. To that end, he made a general demand for "books and records" of the association and specifically requested the documents described in subsubsections (1) through (4), (6), and (9) of subsection (a) of the Act. He also requested "[f]inancial and accounting records related to income and expenses," "code violations," and "annual reports."

¶ 32　　The Ruizes argue that, pursuant to the Act, they were not required to plead bad faith to state a cause of action for attorney fees for the association's failure to produce the documents falling within subsubsections (1) through (4). But count II of their third amended complaint did not allege that they were not provided with the documents referenced in subsubsections (1) through (4): it sought attorney fees only for the failure to produce *books and records*. The count itself is captioned "Attorney's Fees for Failure to Produce Books and Records." And the Ruizes specifically alleged that they had not been provided with "tax returns, financial statements, check ledgers, cancelled checks, a general ledger, a disbursement letter, or a cash receipts journal." These documents fall within the catch-all of subsubsection (9), which lists "itemized and detailed records of all receipts and expenditures" among "books and records of account." Accordingly, we conclude that the court did not err in finding that the Ruizes were required to plead bad faith to sustain their cause of action for attorney fees.

¶ 33　　The only question that remains is whether the Ruizes sufficiently pled bad faith. Illinois is a fact-pleading jurisdiction; plaintiffs are required to set forth the facts that give rise to their cause of action. See *Schal Bovis, Inc. v. Casualty Insurance Co.*, 314 Ill. App. 3d 562, 574 (1999). This applies to all elements of a plaintiff's claim. *Id.* "[N]otice pleading, conclusions of law, and conclusions of fact are insufficient." *Johnson v. Matrix Financial Services Corp.*, 354 Ill. App. 3d 684, 696 (2004).

¶ 34　　Here, the Ruizes alleged that the association's failure to provide them with access to its books and records was "willful, vexatious, and without a proper purpose." This is a quintessential conclusion of law. See, *e.g.*, *Oravek v. Community School District 146*, 264 Ill. App. 3d 895, 898 (1994) ("The bare characterization of certain acts as wilful and wanton misconduct is not sufficient to withstand a motion to dismiss because such misconduct must be manifested by facts alleged in the complaint."). They did not allege facts showing how the association acted willfully or vexatiously, nor did they plead facts demonstrating that the association's failure to turn over records was without a proper purpose. Instead, the Ruizes

argue that the association's failure to produce the books and records within 30 days of Gonzalo's request is necessarily indicative of bad faith. Were we to accept this contention, we would read the requirement of bad faith out of the statute entirely, as any failure to produce records would constitute bad faith, rendering the requirement meaningless. This we must avoid. See *Brucker v. Mercola*, 227 Ill. 2d 502, 514 (2007) ("Each word, clause and sentence of the statute, if possible, must be given reasonable meaning and not rendered superfluous.").

¶ 35 Because the Ruizes failed to allege facts demonstrating bad faith on the part of the association, we affirm the circuit court's dismissal with prejudice of count II of the Ruizes' third amended complaint.

¶ 36                                    III. CONCLUSION

¶ 37 For the foregoing reasons, we affirm the dismissal of count II of the Ruizes' complaint, reverse the circuit court of Cook County's entry of summary judgment in favor of the directors on counts III and IV, and remand the matter for further proceedings in accordance with this ruling.

¶ 38 Affirmed in part, reversed in part, and remanded.