# Illinois Official Reports

## Appellate Court

***Krause v. USA DocuFinish*, 2015 IL App (3d) 130585**

| | |
|---|---|
| Appellate Court Caption | MICHAEL KRAUSE, Plaintiff-Appellant, v. USA DOCUFINISH AND JOHN W. McKILLIP, Defendants-Appellees. |
| District & No. | Third District<br>Docket No. 3-13-0585 |
| Filed | March 11, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 12-SC-6489; the Hon. Mark Thomas Carney, Judge, presiding. |
| Judgment | Reversed; cause remanded. |
| Counsel on Appeal | John C. Ireland (argued), of South Elgin, for appellant.<br><br>Robert A. Kezelis (argued), of Law Offices of Robert A. Kezelis, of Palos Heights, for appellees. |

Panel                      JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.
Justice Lytton concurred in the judgment and opinion.
Justice Wright specially concurred, with opinion.

**OPINION**

¶ 1        The plaintiff, Michael Krause, brought this small claims action under the Illinois Wage Payment and Collection Act (the Act) (820 ILCS 115/1 *et seq.* (West 2012)) to recover wages from his former employer which Krause claimed were earned and unpaid. The plaintiff also brought claims for breach of contract and "interference with contract of employment." The defendants brought counterclaims for "overpayment" and "property damage," but later abandoned their counterclaim for overpayment.

¶ 2        Prior to filing his complaint in small claims court, the plaintiff filed a wage claim against defendant USA DocuFinish with the Illinois Department of Labor (DOL). The DOL ordered defendant USA DocuFinish to pay the plaintiff $3,346.56. Defendant USA DocuFinish initially disputed the DOL's ruling. However, sometime after the plaintiff filed his complaint in small claims court, USA DocuFinish paid the plaintiff the amount ordered by the DOL.

¶ 3        On June 5, 2013, the trial court granted the defendants' motion to dismiss the plaintiff's claim under the Act. The trial court found that section 14 of the Act "precludes further legal action by [plaintiff] Krause because *** sec[tion] 14 causes a loss of jurisdiction for an Employee who has filed a claim with the Dep[artment] of Labor." After denying the plaintiff's motion to reconsider, the trial court entered an order under Illinois Supreme Court Rule 304(a) (Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010)) finding that there was no just cause to delay the appeal of its order dismissing the plaintiff's claim under the Act. This appeal followed.

¶ 4                                             FACTS

¶ 5        The plaintiff worked for defendant USA DocuFinish as its plant production manager. USA DocuFinish's vacation pay policy provides that its employees receive 20 vacation days upon completing 8 years of employment and that, "[u]pon termination of employment, employees will be paid for unused vacation time that has been earned through the last day of work." After working at USA DocuFinish for eight years, the plaintiff quit his job. Thereafter, the plaintiff asked USA DocuFinish to pay him his earned vacation time. Defendant John W. McKillip, the president and chief executive officer of USA DocuFinish, wrote the plaintiff a letter refusing the plaintiff's request. McKillip's letter stated that, despite the fact that the plaintiff had quit, the company had generously agreed not to contest the plaintiff's unemployment and to pay him unemployment benefits which he "really [was] not entitled to."

¶ 6        On March 24, 2011, the plaintiff filed a wage claim against USA DocuFinish with the DOL. He sought payment for 27 earned, unused vacation days which he claimed amounted to $7,786. On April 4, 2012, the DOL issued a "Wage Payment Demand" stating that "[t]he [DOL's] investigation of this matter has disclosed apparent violations of the Wage Payment

and Collection Act." The DOL stated that USA DocuFinish "shall pay to [plaintiff]" 22 days in earned vacation less a $3,000 "gratuitous payment" that USA DocuFinish had made to the plaintiff at separation, which amounted to $3,346.56. Both parties initially disputed the amount ordered by the DOL.[1]

¶ 7 The plaintiff filed an "Exception to the Wage Payment Demand" in the DOL in which he asked the DOL to reconsider certain aspects of its decision. On April 30, 2012, the DOL issued a "Notice of Closing of File" (Notice). The Notice stated that the DOL had "conducted a thorough review" of the plaintiff's wage claim which included "extensive work by [its] staff in an effort to investigate and resolve [the] claim" and "an attempt to conciliate the matter with respondent employer." The Notice went on to state that "[w]e have concluded that there are no further actions that we can take on your behalf with respect to your wage claim." For that reason, the DOL noted that it had "closed [the plaintiff's] file." However, the Notice stated that its "decision to close your file with our agency DOES NOT preclude you from pursuing other legal remedies that may be available to you." On July 10, 2012, the DOL denied the plaintiff's request for reconsideration and noted that the plaintiff's "[a]pplication was properly decided." However, the DOL also noted that "[t]his determination is based solely on the provisions of the [Act] and does not bar any other civil or criminal remedy that may be available to you."

¶ 8 On August 13, 2012, the plaintiff filed a claim for "[o]wed wages" under the Act in the circuit court of Will County, small claims division. The plaintiff also asserted claims for breach of contract and "interference with contract of employment." The complaint alleged that "the defendant is indebted to the plaintiff in the sum of $10,000 for [o]wed wages, enforcement of a Wage Payment Demand issued by the [DOL], breach of [c]ontract, payment of interest, costs, attorney fees, and penalties, and interference with contract of employment." The defendants filed a counterclaim for "overpayment," alleging that, prior to the DOL's wage payment demand, they had already paid the defendant $4,000, which was more than the DOL had ordered them to pay. The defendants also asserted a counterclaim for $23,679.06 in damages that they claimed the plaintiff had deliberately done to the defendants' equipment. During subsequent discussions with the plaintiff, the defendants agreed to abandon their counterclaim for overpayment and filed an "admission of liability" agreeing to pay the plaintiff the amount ordered by the DOL. However, they denied any further liability to the plaintiff and refused to pay any costs or attorney fees in the small claims action. Moreover, the defendants did not withdraw their counterclaim for property damage.

¶ 9 On March 1, 2013, the defendants' counsel handed the court excerpts from section 14 of the Act and brought an oral motion to dismiss based on those excerpts. Specifically, the defendants cited the following language from section 14 of the Act:

---

[1]The plaintiff claimed that the $3,000 paid to him at separation was not a "gratuitous payment" but a "buyout" of a 3% minority interest in the company that the company had previously "gifted" to him. USA DocuFinish denied that the plaintiff ever held any ownership interest in the company. The DOL found that the plaintiff had "furnished no documentary evidence in support of his assertion of ownership." The plaintiff claimed that he submitted several e-mails in which defendant John McKillip and others made references to the plaintiff's ownership interest. The DOL rejected the plaintiff's argument on this point.

"Any employee not timely paid wages, final compensation, or wage supplements by his or her employer as required by this Act shall be entitled to recover through a claim filed with the Department of Labor or in a civil action, *but not both*, the amount of any such underpayments and damages of 2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid. In a civil action, such employee shall also recover costs and all reasonable attorney's fees." (Emphasis added.) 820 ILCS 115/14(a) (West 2012).

The defendants argued that the "but not both" language in the above excerpt, which was added in the January 1, 2011, amendments to the Act (Pub. Act 96-1407, § 10 (eff. Jan. 1, 2011) (amending 820 ILCS 115/14(a))), precluded jurisdiction in the circuit court because the plaintiff had already received a wage payment demand from the DOL.

¶ 10    The trial court granted the defendants' motion to dismiss. The plaintiff brought a motion to reconsider, which the trial court granted on the ground that the plaintiff had inadequate notice of the defendants' motion to dismiss.

¶ 11    On May 9, 2013, the defendants filed a written motion to dismiss for "lack of jurisdiction" under section 2-619 of the Code of Civil Procedure (the Code) (735 ILCS 5/2-619 (West 2012)). The plaintiff filed a response citing *Miller v. J.M. Jones Co.*, 198 Ill. App. 3d 151 (1990), and *Rekhi v. Wildwood Industries, Inc.*, 61 F.3d 1313 (7th Cir. 1995), both of which recognized a party's right to file a claim to collect unpaid wages or benefits in the circuit court after obtaining a wage payment demand from the DOL. On the eve of the motion to dismiss hearing, the defendants filed a "Motion for Sanctions" in which the defendants argued, for the first time, that the Illinois legislature added the "but not both" language to section 14 of the Act in the January 1, 2011, amendments to the Act in order to remove jurisdiction in the courts after a plaintiff had received an award from the DOL.

¶ 12    On June 5, 2013, the trial court granted the defendants' motion to dismiss. In granting the motion, the trial court ruled that the legislative purpose of the 2011 amendments was to remove court jurisdiction over a plaintiff's claim after the plaintiff had received a wage payment demand from the DOL, thereby overturning *Miller*, *Rekhi*, and other, similar cases.

¶ 13    The plaintiff filed a motion to reconsider which cited relevant legislative history from the Act. The court denied the plaintiff's motion. This appeal followed.

¶ 14                                    ANALYSIS

¶ 15    As an initial matter, we must determine whether the trial court's dismissal of the plaintiff's claim in this case was a final and appealable order. The trial court granted the defendants' "Motion to Dismiss for Lack of Jurisdiction." The defendants did not specify whether their motion was brought under section 2-615 (735 ILCS 5/2-615 (West 2012)) or section 2-619 (735 ILCS 5/2-619 (West 2012)) of the Code. In granting the defendants' motion, the trial court did not reference either section. Rather, it simply ruled that the defendants' motion was granted because "sec[tion] 14 of the [Act] precludes further legal action by [the plaintiff] because *** sec[tion] 14 causes a loss of jurisdiction for an Employee who has filed a claim with the [DOL]." The trial court's order did not explicitly state whether its dismissal of the plaintiff's claim was with prejudice.

¶ 16    Nevertheless, we conclude that the trial court's dismissal of the plaintiff's claim was final and appealable. " 'The appealability of an order is determined by its substance rather than its form.' " *Schal Bovis, Inc. v. Casualty Insurance Co.*, 314 Ill. App. 3d 562, 567 (1999) (quoting *Boonstra v. City of Chicago*, 214 Ill. App. 3d 379, 385 (1991)); see also *Schal Bovis*, 314 Ill. App. 3d at 567 ("it is the substance of the trial court's order which determines whether it is final, not whether the court has used any particular language"). In other words, whether the trial court's dismissal order is final (and thereby appealable under Rule 304(a)) or is not final (and, therefore, not appealable) is a function not of its words, but of its effect. *Schal Bovis*, 314 Ill. App. 3d at 568. Thus, "if the dismissal is because of a deficiency that could be cured by simple technical amendment, the order is not the subject of appeal." *Id.* On the other hand, if the dismissal is because of a "perceived substantive legal deficiency," the dismissal order is final and therefore appealable. *Id.* In this case, the trial court dismissed the plaintiff's claim under the Act based upon a perceived legal deficiency, *i.e.*, its conclusion that the 2011 amendment to section 14 of the Act removed the court's jurisdiction over the plaintiff's claim. This perceived deficiency could not be cured by a simple amendment to the complaint. In apparent recognition of this fact, the trial court summarily denied the plaintiff's oral request for leave to amend the complaint "if the pleadings are insufficient" and, in its July 22, 2013 order, stated that there was "no just cause to delay an appeal" of the dismissal order "in accord with [Supreme Court Rule] 304A." Accordingly, regardless of whether the trial court dismissed the plaintiff's claim under section 2-615 or section 2-619, its dismissal order is final and appealable.

¶ 17    The fact that the defendants' counterclaim for property damage remained pending did not render the trial court's dismissal order nonfinal or nonappealable. "An order is final and appealable if it terminates the litigation between the parties on the merits or disposes of the rights of the parties, either on the entire controversy *or a separate part thereof*." (Emphasis added and internal quotation marks omitted.) *In re Marriage of Gutman*, 232 Ill. 2d 145, 151 (2008). Supreme Court Rule 304(a) provides that "an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims *** if the trial court has made an express written finding that there is no just reason for delaying *** appeal." Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010). Here, the trial court's dismissal order terminated the litigation as to the plaintiff's claim for owed wages under the Act, which was a separate part of the controversy that was severable from the defendants' counterclaim for property damage. Moreover, the trial court's July 22, 2013 order included the necessary Rule 304(a) language, thereby rendering the court's dismissal order appealable under that rule.

¶ 18    The special concurrence suggests that the Rule 304(a) language was ineffective because, in the special concurrence's view, USA DocuFinish's counterclaim for overpayment also remained pending at the time of the trial court's dismissal order, and that counterclaim was directly related to the plaintiff's claim for the payment of past due compensation. *Infra* ¶ 30 n.5. We disagree. Although the trial court did not enter an order formally dismissing USA DocuFinish's counterclaim for overpayment, USA DocuFinish had effectively abandoned that counterclaim. Before it filed its motion to dismiss, USA DocuFinish filed a "First Amended Answer" in which it: (1) admitted that it had "previously misread the full nature of" the DOL's wage payment demand; (2) admitted that "*no payments were made to Krause*" (emphasis added); and (3) "confess[ed] that [it] owe[d] [Krause] $3346.56 as a result of the [DOL's] award," *i.e.*, it "confess[ed] to being liable to *** Krause for the amounts awarded

- 5 -

by the State of Illinois." Accordingly, before it filed its motion to dismiss, USA DocuFinish had expressly disavowed the factual and legal bases of its counterclaim for overpayment, thereby abandoning that counterclaim. After making these factual admissions and confession of liability, it is difficult to imagine how USA DocuFinish could have continued to pursue its counterclaim for overpayment.[2]

¶ 19 In any event, even if USA DocuFinish's counterclaim for overpayment remained pending in a formal sense, the trial court did not abuse its discretion by finding that there was no just reason to delay enforcement or appeal of its dismissal order. "Although the existence of counterclaims on the same or similar issue is *** one of the factors the trial court should consider against granting Rule 304(a) relief, it is not the only consideration." *Schal Bovis*, 314 Ill. App. 3d at 570. "Instead, the decision to grant or deny Rule 304(a) relief is best left to the sound discretion of the trial court who must determine whether, in its view, allowing an immediate appeal would have the effect of expediting the resolution of the controversy, be fair to the parties and conserve judicial resources." *Id.* The standard of review is whether the trial court abused its discretion in finding such an order immediately appealable under Rule 304(a). *Id.* We find no abuse of discretion here. As noted, given the admissions and the confession of liability it made in its "First Amended Answer," USA DocuFinish could not have effectively pursued its counterclaim for overpayment. Thus, the trial court reasonably found that there was no just reason to delay the appeal, notwithstanding the fact that the counterclaim had not been formally dismissed. See generally *Schal Bovis*, 314 Ill. App. 3d at 570.

¶ 20 The special concurrence would reverse the trial court's decision to grant the defendants' motion to dismiss because it concludes that the defendants' failure to specify whether the motion was brought under section 2-615 or 2-619 of the Code and the trial court's subsequent refusal to grant the plaintiff's request to amend his complaint prejudiced the claimant and unnecessarily postponed a resolution of the plaintiff's claims on the merits. See *infra* ¶¶ 32-41. We disagree. Although "[m]eticulous practice dictates that motions should be properly designated," "[r]eversal by reason of misdesignation is only required where the nonmovant has been prejudiced by the error." *Scott Wetzel Services v. Regard*, 271 Ill. App. 3d 478, 481 (1995); see also *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 484 (1994). A nonmovant is not prejudiced if it is clear from the record that both the trial court and the nonmovant "understood the defendant's position" and "the parties addressed the motion on its merits." *Scott Wetzel Services*, 271 Ill. App. 3d at 481. In such cases, "[n]othing would be served by remanding th[e] case for reconsideration of matters which were briefed and argued by the parties below." *Id.*

¶ 21 Such is the case here. The jurisdictional issue presented in USA DocuFinish's motion to dismiss raised a purely legal question (*i.e.*, the proper construction of the 2011 amendment to section 14 of the Act). Both the trial court and the plaintiff understood the issue presented by the motion and the parties argued the issue on the merits extensively before the trial court. Moreover, because the resolution of the motion depends entirely on an issue of statutory

---

[2]That is so even though the admissions made in USA DocuFinish's unverified answer are evidentiary admissions rather than binding judicial admissions. *Pettigrew v. Putterman*, 331 Ill. App. 3d 633, 641-42 (2002); *Lawry's The Prime Rib, Inc. v. Metropolitan Sanitary District of Greater Chicago*, 205 Ill. App. 3d 1053, 1059 (1990).

construction, the same analysis will apply regardless of whether the motion were treated as a section 2-615 motion for failure to state a claim or a section 2-619(a)(1) motion to dismiss for lack of subject matter jurisdiction. Accordingly, USA DocuFinish's failure to properly designate its motion did not prejudice the plaintiff. A reversal on that basis would serve no useful purpose and would elevate form over substance. Further, because the trial court dismissed the plaintiff's complaint based upon a perceived jurisdictional defect (*i.e.*, based upon the trial court's conclusion that the 2011 amendments to section 14 of the Act barred the claimant's claim for overpayment as a matter of law), the dismissal could not have been avoided by allowing the claimant to amend his complaint.

¶ 22    We therefore proceed to the merits of this appeal. When reviewing a dismissal pursuant to section 2-615, our inquiry is whether the allegations of the complaint, construed in the light most favorable to the nonmoving party, are sufficient to establish a cause of action upon which relief may be granted. *Weidner v. Karlin*, 402 Ill. App. 3d 1084, 1086 (2010). When reviewing a section 2-619 motion to dismiss, we must consider whether a genuine issue of material fact exists that precludes dismissal, and whether an affirmative matter negates the plaintiff's cause of action completely or refutes critical conclusions of law or conclusions of material unsupported fact. *Turner v. 1212 S. Michigan Partnership*, 355 Ill. App. 3d 885, 892 (2005).[3] We must interpret the pleadings in the light most favorable to the plaintiff. *Abruzzo v. City of Park Ridge*, 231 Ill. 2d 324, 332 (2008). Our review under either section is *de novo*. *Brooks v. McLean County Unit District No. 5*, 2014 IL App (4th) 130503, ¶ 14; see also *DeHart v. DeHart*, 2013 IL 114137, ¶ 18; *Saichek v. Lupa*, 204 Ill. 2d 127, 134 (2003); *Shirley v. Harmon*, 405 Ill. App. 3d 86, 90 (2010). We can affirm on any basis present in the record. *Brooks*, 2014 IL App (4th) 130503, ¶ 14.

¶ 23    The construction of a statute also presents a question of law which we review *de novo*. *People v. Perez*, 2014 IL 115927, ¶ 9. "When construing a statute, [our] primary objective is to ascertain and give effect to the legislature's intent, keeping in mind that the best and most reliable indicator of that intent is the statutory language itself, given its plain and ordinary meaning." *Id.* "A court must view the statute as a whole, construing words and phrases in light of other relevant statutory provisions and not in isolation." *Id.*; see also *People v. Brown*, 2013 IL 114196, ¶ 36. "Each word, clause, and sentence of a statute must be given a reasonable meaning, if possible, and should not be rendered superfluous." *Perez*, 2014 IL 115927, ¶ 9; *Brown*, 2013 IL 114196, ¶ 36. A reviewing court "may consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another." *Perez*, 2014 IL 115927, ¶ 9; *Brown*, 2013 IL 114196, ¶ 36. Moreover, "a court presumes that the General Assembly, in its enactment of legislation, did not intend absurdity, inconvenience, or injustice." *Perez*, 2014 IL 115927, ¶ 9.

¶ 24    The resolution of this appeal turns entirely on the meaning of the "but not both" language added to section 14 of the Act by the 2011 amendment. The defendants interpret this language as a jurisdictional provision limiting where a plaintiff may file a claim for unpaid wages under the Act. According to the defendants, amended section 14 provides that the

---

[3]Section 2-619(a)(1) provides for the dismissal of an action based on lack of subject matter jurisdiction. 735 ILCS 5/2-619(a)(1) (West 2012). Thus, if the trial court dismissed the plaintiff's claim under section 2-619, it likely did so under that subsection.

plaintiff may *file* his claim either in court or in the DOL, *but not both*. Once the plaintiff has filed with the DOL, he must content himself with whatever remedy results from those administrative proceedings. If the DOL dismisses the plaintiff's claim or chooses not to pursue the matter in court on the plaintiff's behalf (*i.e.*, if, as here, the DOL decides to try to resolve the plaintiff's claim informally through conciliation with the employer), the plaintiff may not file a subsequent court action for lost payment of wages.

¶ 25    The plaintiff, by contrast, reads amended section 14 as a remedial provision which limits only the *amount that a plaintiff may recover* under the Act, not as a jurisdictional provision that limits the avenues by which (or venues in which) he may seek recovery. According to the plaintiff, amended section 14 merely provides that a plaintiff may recover the amount of underpaid wages plus penalties in either the DOL or the circuit court, "but not both." In other words, the plaintiff reads this provision merely as preventing a plaintiff from obtaining a double recovery.

¶ 26    We agree with the plaintiff. The defendants' position would lead to absurd and inequitable results. The defendants concede that the wage payment demand issued by the DOL in this case is not legally binding on the defendants and cannot be enforced by a circuit court. The defendants argue that all the wage payment demand accomplished was to "put USA DocuFinish on notice that it *may* owe moneys in the future to Krause once the DOL procedure had been fully completed." (Emphasis added.) Nevertheless, the defendants maintain that this nonbinding DOL wage payment demand is the only recourse available to the plaintiff in this case because the plaintiff chose to file a claim with the DOL. Thus, in the defendants' view, when the DOL opted not to pursue the matter on the plaintiff's behalf in court, the plaintiff was left without an enforceable remedy despite the fact that the DOL found (based on its initial investigation) that the defendants owed the plaintiff more than $3,000 in unpaid wages. The purpose of the Act is "to provide employees with a cause of action for the timely and *complete* payment of earned wages or final compensation." (Emphasis added.) *Majmudar v. House of Spices (India), Inc.*, 2013 IL App (1st) 130292, ¶ 11. The defendants' interpretation of amended section 14 would undermine that purpose.

¶ 27    Moreover, the amended version of section 11 of the Act (which outlines the DOL's responsibility to investigate and litigate claims) provides further support for the plaintiff's position. The 2011 amendments provide that, subject to appropriation, the DOL "may establish an administrative procedure to adjudicate claims *** filed with the [DOL] for $3,000 or less *** and to issue final and binding administrative decisions on such claims subject to the Administrative Review Law." 820 ILCS 115/11(d) (West 2012). However, section 11 had already provided that "[n]othing herein shall be construed to prevent any employee from making complaint or prosecuting his or her own claim for wages." 820 ILCS 115/11 (West 2010). The 2011 amendments did not alter that language, even though they authorized the DOL to establish a procedure for rendering binding adjudications for certain claims. This strongly suggests that the legislature did not intend the 2011 amendments to bar plaintiffs from filing actions for unpaid wages in the circuit court after they file claims in the DOL. Moreover, the 2011 amendments also added the following language to section 11:

> "Any employee aggrieved by a violation of this Act or any rule adopted under this Act may file suit in circuit court of Illinois, in the county where the alleged violation occurred or where any employee who is party to the action resides, without regard to

exhaustion of any alternative administrative remedies provided in this Act." 820 ILCS 115/11 (West 2012).

¶ 28    Further, cases interpreting earlier versions of the Act had recognized that the Act allowed a plaintiff to file civil actions in court after pursuing his unpaid wage claim with the DOL. See, *e.g.*, *Miller*, 198 Ill. App. 3d 151; *Rekhi*, 61 F.3d 1313.

¶ 29    Moreover, the legislative debates on the proposed 2011 amendments to the Act suggest that the main goal of those amendments was to "allow[ ] for the creation *** of an administrative procedure within the [DOL] to resolve small claims under the Act." 96th Ill. Gen. Assem., House Proceedings, April 28, 2010, at 77 (statements of Representative Hernandez). The debates do not mention the removal of jurisdiction or suggest any intent either to limit court jurisdiction over wage payment claims or to overrule prior cases recognizing such jurisdiction.

¶ 30    In addition, although not binding on this court, statements the DOL made in its notice of closing of file and its denial of the plaintiff's motion for reconsideration clearly suggest that the DOL believed that the plaintiff had a right to pursue his unpaid wage claim in court even after the DOL had issued its wage payment demand. For example, the Notice informed the plaintiff that the DOL's "decision to close your file with our agency DOES NOT preclude you from pursuing other legal remedies that may be available to you," and stated that "[t]his determination *** does not bar any other civil or criminal remedy that may be available to you."

¶ 31    The defendants' argument is based largely on the erroneous assertion that the plaintiff's claim before the circuit court was "solely" a claim to enforce the DOL's wage payment demand. If that were true, we would agree with the defendants that the circuit court lacked jurisdiction over the plaintiff's claim. See *Walters v. Department of Labor*, 356 Ill. App. 3d 785, 789-94 (2005) (holding that circuit court lacked jurisdiction to review the DOL's wage payment demand because, in issuing the wage payment demand upon defendant employer, the DOL exercised merely an investigative function and had no authority to issue a legally binding order). However, the plaintiff's claim was not so narrow. Although the plaintiff's small claims complaint lists the "enforcement of the Wage Payment Demand" as one of its claims, it clearly also asserts an independent civil claim for "[o]wed wages" under the Act. [4] For the reasons set forth above, the trial court has jurisdiction over the latter claim.

¶ 32    The defendants' mischaracterization of the plaintiff's claim leads them to misstate the issues on appeal. Contrary to the defendants' assertion, the issue presented is not whether "the issuance of a Wage Demand Order by the DOL, without any evidentiary hearing, confers subject matter jurisdiction on a trial court to enforce said *** Order." Nor is the issue whether the Act allows for the award of attorney fees based solely on a wage demand order. Rather, the issue is whether a plaintiff may file a civil claim for owed wages under the Act in the circuit court after it has received a wage payment demand from the DOL. As noted above, we answer that question in the affirmative.

---

[4]The complaint seeks to recover amounts in excess of the amount suggested in the DOL's wage payment demand plus attorney fees and penalties, which are available under the Act. This further confirms that the plaintiff asserted a claim under the Act and did not limit his claims to the enforcement of the DOL's wage payment demand.

¶ 33    The defendants also erroneously assert that the plaintiff is trying to collect on the DOL's wage payment demand prematurely, *i.e.*, before the DOL's process has concluded. We disagree. As noted above, the plaintiff is not trying to enforce the DOL's wage payment demand. Rather, he has asserted an independent civil claim for owed wages under the Act. In any event, contrary to the defendants' suggestion, the proceedings before the DOL were completed before the plaintiff filed his claim in the circuit court. On April 30, 2012, the DOL issued a "Notice of Closing of File" which unequivocally stated that the DOL had concluded that there were no further actions that it could take with respect to the plaintiff's wage claim and that it had "closed [the plaintiff's] file." The plaintiff subsequently filed a request for reconsideration which the DOL denied on July 10, 2012. Thus, by the time the plaintiff filed his civil complaint on August 13, 2012, the DOL's process had fully concluded.

¶ 34                                  CONCLUSION

¶ 35    For the foregoing reasons, we reverse the judgment of the circuit court of Will County and remand the case for further proceedings.

¶ 36    Reversed; cause remanded.

¶ 37    JUSTICE WRIGHT, specially concurring.

¶ 38    Assuming, *arguendo*, that the majority has correctly determined the Rule 304(a) finding gives rise to this court's jurisdiction,[5] I agree with the majority that the trial court erroneously dismissed the small claims complaint with prejudice based on a flawed construction of the Act. However, my difficulty with the effectiveness of the Rule 304(a) finding directly results from the muddy record in the case at bar. I respectfully observe the majority has done an admirable job of making sense out of a very difficult procedural record.

¶ 39    My separate offering emphasizes that defendants' motion to dismiss did *not* include a prayer for relief seeking a dismissal at all. Instead, the defense motion acrimoniously accused plaintiff's counsel of "misleading" the trial court "solely for the financial gain of the Plaintiff's attorney." The prayer for relief does not mention dismissal and reads as follows:

   "WHEREFORE, the Defendants respectfully request that Krause's claim for fees be denied, and that costs on behalf of the Defendants be awarded due to the specious and improper claims brought by the Plaintiff and his counsel."

¶ 40    In addition, defendants failed to specify whether their motion, captioned as a motion to dismiss based on lack of jurisdiction, was predicated on section 2-615 or section 2-619 or section 2-619.1. 735 ILCS 5/2-615, 2-619, 2-619.1 (West 2012). I respectfully submit the trial court should have asked defense counsel to clarify the basis for the defense motion, on

_____

    [5]Unlike the majority, I am not convinced the Rule 304(a) language was effective. It appears both counts of the counterclaim remained pending at the time of this appeal. I observe that count I was directly related to the overpayment of past-due compensation that plaintiff sought to recover. This record shows defendants did not request to dismiss the pending counterclaim, further requiring the majority to speculate that the claim was, in essence, withdrawn. Based on this record, it is less than clear to me that the ruling on the motion to dismiss plaintiff's complaint was a final order subject to a Rule 304(a) finding.

- 10 -

the record or in writing, before the court entertained arguments from the attorneys on the merits of the poorly-drafted motion. In this appeal, I write separately to discourage other trial courts from overlooking obvious flaws in pending motions to dismiss in future cases because the lack of clarity in the pretrial proceedings in the case at bar is troublesome to me as a former trial court judge.

¶ 41    The requirement for defendants to clearly label whether a motion to dismiss is based on section 2-615, section 2-619, or section 2-619.1 is particularly important to me because this matter began as a small claims action. Supreme Court Rule 281 loosens the stringent pleading requirements for small claims and thereby discourages defense challenges to the complaint based only on the sufficiency of the language describing the nature of the claim. Ill. S. Ct. R. 281 (eff. Jan. 1, 2006). In fact, Rule 287 prohibits a defendant from challenging the sufficiency of a complaint pursuant to section 2-615 without specifically requesting and receiving leave of court. Ill. S. Ct. R. 287 (eff. Aug. 1, 1992).

¶ 42    In combination, both rules help plaintiff avoid endless pretrial defense motions directed at the complaint and allow the court to conduct a timely trial on the merits. I note that due to the multiple challenges to the small claims complaint in the case at bar, nearly three years have gone by since the filing of the complaint and the parties are no closer to scheduling the matter for a trial on the merits. Moreover, due in part to the defense tactics, plaintiff's attorney fees incurred to resist the dismissal with prejudice may now far exceed the amount of unpaid wages originally at issue.

¶ 43    Next, to support my view that plaintiff could not have known the court would grant the written motion to dismiss with prejudice, I point out that when the court allowed the prior oral motion to dismiss, the trial court did not announce the dismissal would be with prejudice. Next, I focus on the arguments presented to the court by both attorneys on July 22, 2013 in support of my view that plaintiff was prejudiced by an unexpected dismissal with prejudice. Referring to the decision in *Walters*, defense counsel stated, "[I]n that case, they come up with something called wage demand, enforcement of which is not something you can do in a court of law, which is exactly what his complaint says." In response, plaintiff's attorney stated, "The complaint does say 'Enforcement of a [W]age [D]emand,' but it also says at the very start 'owed wages.' " Plaintiff's counsel added, "[I]f the pleadings are insufficient, Your Honor, I would ask leave to amend the pleading."

¶ 44    I agree that even under the amended Act, an employee cannot "enforce" a wage demand letter in circuit court. In fact, plaintiff's counsel conceded this point during oral argument before this court. Importantly, during the oral arguments before this court, defense counsel admitted that *if* the original complaint had not attempted to enforce the wage demand letter, then defense counsel would have asked for his client's day in court without challenging the court's jurisdiction to resolve the wage dispute on this basis.

¶ 45    Therefore, I submit that if the court had not ignored plaintiff's requests to amend the complaint, an amended pleading could have extinguished the jurisdictional defect based on *Walters* and a trial on the merits would have been possible. I submit the complaint in this case could easily have been cured to give rise to the trial court's ability to swiftly address the merits of the wage issue following a proper construction of the 2011 amendment to the Act provided by this opinion.

¶ 46    In addition to the *Walters* argument, defense counsel also raised an alternative jurisdictional challenge by citing to *Miller v. J.M. Jones Co.*, 198 Ill. App. 3d 151 (1990).

Specifically, defense counsel argued *Miller* held that an employee "can file a private action or [the employee] can file an action by the Department of Labor, but not both." As noted by the trial judge, *Miller* was decided before the 2011 amendment and did not automatically apply to the facts in this case. Thus, I respectfully disagree with the majority's observation that plaintiff knew or should have known the complaint could not be cured by amendment.

¶ 47 Further, it appears to me that defendants improperly asked the court to consider a hybrid motion pursuant to section 2-619.1, without indicating this was a combined motion. Thus, I respectfully submit that *plaintiff* justifiably approached the motion as a section 2-615 motion and requested leave to amend.

¶ 48 Unlike my respected colleagues, I believe plaintiff suffered actual prejudice when the trial court ignored the request to amend the complaint and tossed the lawsuit out the door for a second time. See *Hastings Mutual Insurance Co. v. Ultimate Backyard, LLC*, 2012 IL App (1st) 101751, ¶ 13 (citing *Illinois Graphics*, 159 Ill. 2d at 484). On this basis, I specially concur because I believe this court should reverse the trial court's ruling on this procedural basis before conducting a legal analysis of the 2011 amendment to the Act. Such an approach may benefit future employees who turn to the small claims court to resolve wage disputes.

¶ 49 Importantly, I do not take issue with the correctness of the majority's legal analysis concerning the 2011 amendment to the Act. I agree that the Act allows an employee to first turn to the Department of Labor and then later file a complaint in the circuit court when the employer continues to refuse to pay past due wages after the demand letter has been issued and before the civil lawsuit occurs. However, if the trial court allowed plaintiff's motion to amend, I have no doubt that the amended pleading would have fine-tuned the legal issues in this case for our review, such that we could provide further and more dispositive guidance to the trial court on remand.

¶ 50 It is undisputed in this case that the employer did not pay any portion of the wages identified in the wage demand letter *before* plaintiff initiated this small claims matter in civil court. Therefore, on remand, the trial court will undoubtedly confront the issue of whether this particular employee may recover wages in *excess* of the amount identified in the written demand letter, along with attorney fees and civil penalties permitted under the Act. Since this issue was not properly developed in the pleadings in the trial court, we are not allowed to provide advisory guidance on this more dispositive issue at the heart of the dispute in the case at bar.

¶ 51 I conclude judicial economy would have been well-served if the trial court had instructed defendants to clarify the basis of their motion for the court, formally ruled on plaintiff's request to amend the complaint following the hearing on the motion to reconsider, and then compelled the defense to withdraw count I of the counterclaim before allowing the request for a Rule 304(a) finding. For the reasons set forth above, I would reverse the order dismissing the complaint with prejudice and remand with directions for the trial court to allow plaintiff's request to amend the complaint. On this basis, I specially concur.