2025 IL App (1st) 230739

SECOND DIVISION
September 2, 2025

No. 1-23-0739, 1-23-0747, & 1-23-0748 Cons.

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| KONSTANTINOS PNEVMATIKOS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | Nos. 21L50484, |
| | ) | 21L50485 & |
| SOTIRIOS PAPPAS, | ) | 21L50486 Cons. |
| | ) | |
| Defendant-Appellant. | ) | Honorable |
| | ) | Patrick Heneghan, |
| | ) | Judge Presiding. |

_____

JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Presiding Justice Van Tine and Justice Ellis concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Sotirios Pappas, appeals the trial court's denial of his motion to dismiss the petitions filed by plaintiff, Konstantinos Pnevmatikos, to recognize and register three foreign judgments against Pappas.

¶ 2    At issue in this appeal are three foreign judgments, originally entered in Greece. On March 21, 2003, the Korinthos Single-Member Court of First Instance (Greek trial court) issued a payment order requiring Pappas to pay Pnevmatikos €38,160 with interest at the legal rate, beginning February 5, 2003, and €1,170.95 in judicial costs. On April 11, 2003, the Greek trial

court issued a second payment order against Pappas, requiring him to pay Pnevmatikos €350,000, with interest at the legal rate beginning February 5, 2003, and €10,714.59 in judicial costs. On July 22, 2003, the Greek trial court issued a third payment order, requiring Pappas to pay Pnevmatikos €300,000, with interest at the legal rate beginning February 5, 2003, and €5,863.90 in judicial costs (collectively, the payment orders).

¶ 3      In accordance with Greek legal procedure, Pappas filed timely applications to set aside the payment orders within 15 days of when those payments were served upon him on April 11, 2003, May 5, 2003, and July 31, 2003. Those three applications were dismissed by the Greek trial court on October 12, 2006. Thereafter, Pappas timely appealed, and on June 17, 2008, the appellate court in Nafplio, Greece, denied defendant's three appeals on the merits, concluding the relevant Greek proceedings.

¶ 4      Approximately 13 years later, on November 3, 2021, Pnevmatikos filed petitions in Illinois seeking to recognize and register the three foreign judgments in case numbers 2021-L-050484, 2021-L-050485, and 2021-L-050486.[1] Each petition alleged three counts—count I: "Recognition of Foreign Judgment" under the Uniform Foreign-Country Money Judgments Recognition Act (Recognition Act) (735 ILCS 5/12-661 to 12-672 (West 2020)), count II: "Registration of Foreign Judgment" under the Uniform Enforcement of Foreign Judgments Act (Enforcement Act) (*id.* §§ 12-650 to 12-657), and count III: "Revival of Foreign Judgment" pursuant to sections 13-218 and 2-1602 of the Code of Civil Procedure (*id.* §§ 13-218, 2-1602).

¶ 5      Thereafter, on December 22, 2021, Pappas filed a motion to dismiss the petitions pursuant to section 2-619 (*id.* § 2-619) of the Code of Civil Procedure. Pappas argued that the petitions were

---

[1]Although the petitions were filed under different case numbers and they were not formally consolidated in the circuit court of Cook County, the record shows that they were heard simultaneously and decided together.

barred by the statute of limitations set forth in the Recognition Act, which provided that "[a]n action to recognize a foreign-country judgment must be commenced within the earlier of the time during which the foreign-country judgment is effective in the foreign country or 15 years from the date that the foreign-country judgment became effective in the foreign country." *Id.* § 12-669. Pappas contended that the payment orders were "effective" at the time they were initially entered in 2003, and accordingly, the statute of limitations expired 15 years thereafter, in 2018.

¶ 6     In support, Pappas attached an affidavit from George Stathis, who averred that he was an attorney, licensed to practice law in Greece, and that he was "familiar with the entrance and enforcement of Payment Orders" in Greece. Stathis asserted that payment orders "are effective immediately upon service of the order on a defendant, and enforceable three working days after being served." Stathis further stated that payment orders are effective "irrespective of any post-judgment action which may be taken by an individual against whom the payment order is entered."

¶ 7     On February 1, 2022, Pnevmatikos responded to Pappas's motion to dismiss. Pnevmatikos contended that Pappas's motion was based on a "misinterpretation of the word 'effective' " in the Recognition Act. Pnevmatikos asserted that the Recognition Act did "not contain a separate definition of 'effective,' " however, the language of the Recognition Act provided that it only applied "to the extent that the judgment *** under the law of the foreign country where rendered, is final, conclusive, and enforceable." *Id.* § 12-663. Pnevmatikos further noted that the Recognition Act is a uniform act, and cited comments to the Uniform Foreign-Country Money Judgments Recognition Act (Uniform Act), which provided that the

> "requirement contains three distinct, although inter-related concepts. A judgment is final when it is not subject to additional proceedings in the rendering court other than execution. A judgment is conclusive when it is

3

given effect between the parties as a determination of their legal rights and obligations. A judgment is enforceable when the legal procedures of the state to ensure that the judgment debtor complies with the judgment are available to the judgment creditor to assist in collection of the judgment.

\*\*\*

\*\*\* Unless the foreign-country judgment is final, conclusive, and (to the extent it grants recovery of a sum of money) enforceable in the foreign country where it was rendered, it will not be within the scope of this Act." Unif. Foreign-Country Money Judgments Recognition Act § 3 cmt. 3, at 5-6 (Nat'l Conf. of Comm'rs on Unif. State L. 2005).

¶ 8 Because the Recognition Act applied only to judgments that were "final, conclusive, and enforceable," Pnevmatikos asserted that the term "effective," as used in section 12-669, must refer to when the judgment became final, conclusive and enforceable in Greece. Pnevmatikos asserted that final conclusive judgments were not entered in Greece until 2008, when the Greek appellate court decided Pappas's appeals, and accordingly, the statute of limitations would not expire until 2023, making Pnevmatikos's petitions timely filed in 2021.

¶ 9 Pnevmatikos also attached affidavits from two Greek lawyers, Giorgos Giannikos and Ionnis Roumpos, who averred to their understanding that, under Greek law, it was not until Pappas's appeals were adjudicated and dismissed on the merits that the payments orders "had the force of *res judicata* and were final, conclusive and fully enforceable." Roumpos also noted that the limitation period in Greece "begins to run only when there has been a final court decision, or in the absence of an opposition, when the period to file an opposition has expired." Roumpos "disagree[d] with" Stathis's conclusion that the payment orders were effective upon their service

on a defendant, opining that the orders must first be "final, having the force of *res judicata* and satisfying the requirements of due process set forth in the [Greek] Constitution."

¶ 10     On March 8, 2022, Pappas replied, contending that "effective" as used in the Recognition Act means when the payment orders were "enforceable," that payment orders are "immediately enforceable" under Greek law, and that the Greek court did not stay enforcement of the payment orders. Pappas conceded that foreign money judgments must be "final, conclusive and enforceable" for the Recognition Act to apply but asserted that "these requirements w[ere] met *** in 2003" and that comments to the Uniform Act made "no mention of *** exhausting of all appeals prior to a judgment being considered 'enforceable.' "

¶ 11     In support of the reply, Pappas attached a new affidavit from another Greek attorney, Panagiotis Melissinos, who opined that the payment orders were "fully enforceable three working days after being served. Thus, as correctly stated by Mr. Stathis, the Payment Orders at issue were fully effective and enforceable when they were issued and served in 2003."

¶ 12     The trial court apparently held a hearing on the motion to dismiss on August 9, 2022. No transcript appears in the record on appeal, and the written order entered on that date indicates that the court heard the "second day of oral argument" relating to Pappas's motion to dismiss. The court ordered the parties to submit agreed findings of fact and conclusions of law, which the parties submitted on September 20, 2022. In particular, the parties agreed to the English translations of several relevant Greek statutes.

¶ 13     On April 13, 2023, the court entered an order on Pappas's motion to dismiss. The court noted that the parties agreed that the Greek judgments were "effective" under the Recognition Act only when they were "final, conclusive and enforceable" in Greece, but the parties disagreed as to when that occurred. Accordingly, the trial court found that the "critical issue before [the] [c]ourt

5

is whether, under Greek law, the Payment Orders became final, conclusive and enforceable when first issued in 2003 or, instead, when all appeals were exhausted in 2008."

¶ 14    The trial court explained that the Greek civil code provided that payment orders were "enforceable instrument[s]" and that a debtor against whom a payment order is issued has 15 days to object to the order upon its service. Such an objection does not suspend enforcement of the order, but a Greek court may grant a stay of enforcement until "a final judgment on the opposition is issued." The parties agreed that in this case, no stay of enforcement was issued by the Greek court.

¶ 15    The trial court then described the Greek limitations period, which provides for a "20-year statute of limitations *** [that] begins to run when either (1) there is a final ruling on the lodging of an objection or (2) after the period set for lodging an objection expires." The court explained that "a payment order, which is enforceable three days after issuance, may be enforceable for a period longer than 20 years, depending on when a final ruling is issued."

¶ 16    The trial court then turned to the parties' arguments regarding the three requirements. The court found that Pappas's argument "conflate[d] 'enforceable' with 'effective'—(as well as with 'final' and 'conclusive')—as those phrases are used in the Recognition Act.*** In [Pappas]'s view, a judgment that is enforceable also is 'effective,' as well as 'final' and 'conclusive.' " The court, however, concluded that the Recognition Act "require[s] three individual showings for a foreign judgment to be considered effective: one of finality, one of conclusiveness, *and* one of enforceability." (Emphasis in original.) The trial court stated that those words were not "synonyms of each other. Instead, taken together, they are cumulative, complementary, and compulsory."

¶ 17    The court agreed that the payment orders were "enforceable" under Greek law at the time they were entered in 2003, "a fact not disputed by the parties." The court found, however, that the

6

authority provided by the parties supported the conclusion that the payment orders "were not final under Greek law until a decision on the objections from [Pappas] was reached." The court cited the agreed upon translation of article 268 of the Greek civil code, which provided that "[t]he limitation period is extended after the same [payment order] becomes final *** by final rejection of the opposition provided for in article 632 par. 2 of the Code of Civil Procedure." The court explained that the phrase " 'after the same [payment order] becomes final,' on its face, acknowledges that a payment order is not considered 'final' upon issuance, but only after a 'final' decision is reached on a timely-filed objection." The court noted that the statute "differentiate[d] between (1) an 'order for payment, which is a public enforceable instrument' and (2) a 'final' payment order/public enforceable instrument (*i.e.* 'after the same [payment order] becomes final')."

¶ 18    The court noted that there was some ambiguity as to whether the language "final rejection of the opposition" referred to the decision by the Greek trial court in 2006, or the Greek appellate court's decision 2008. The court noted, however, that both parties' Greek legal experts agreed that the 20-year Greek statute of limitations would not expire until 2028, and accordingly, "final rejection of the opposition," must necessarily refer to when the Greek appellate court reached its final decision in Pappas's appeals.

¶ 19    In sum, the trial court concluded that

> "each of the three Greek Payment Orders constituted 'judgments' capable of recognition and enforcement under both the Recognition Act and the Enforcement Act.
>
> The Court further concludes that all three Greek Payment Orders were timely registered and therefore are capable of enforcement in Illinois.

The Court finds more than sufficient evidence and legal authority in the record to conclude that enforceability is not synonymous with finality and conclusiveness under Greek law. On the contrary, this Court finds that the Payment Orders, despite being enforceable from 2003 onwards, only became final and conclusive in 2008, after all appeals were resolved. *** Therefore, [Pnevmatikos]'s Petitions filed on November 3, 2021—within 15 years of June 17, 2008—were timely-filed under the Recognition Act."

¶ 20    Finally, the court observed that Pnevmatikos's petition "included a 'Count III,' which was styled 'Revival of Foreign Judgment.' " The court indicated that Pnevmatikos was "being overly cautious by including Count III" to ensure that he had sought revival of the judgment if it was determined that revival was required. The court found, however, that count III was an "unnecessary and premature procedural misstep" because the foreign money judgments became "original Illinois judgment[s] from the date [they were] filed with the clerk of the circuit court." The court explained:

"In this case, [Pnevmatikos] registered with the Clerk of the Circuit Court of Cook County all three Greek judgments on November 3, 2021. Thus, on that date each such judgment became 'an original Illinois judgment' under section 12-652(a) of the Enforcement Act as well as under section 12-667 of the Recognition Act. Under section 12-108(a) of the Code, those judgments remain enforceable for seven years- until November 2, 2028. In addition, each of those judgments is capable of revival commencing on November 2, 2027 and continuing through November 2, 2028, consistent with section 2-1602(a) of the Code of Civil Procedure."

¶ 21    The court therefore dismissed count III as "prematurely brought," noting that the dismissal was "without prejudice" to Pnevmatikos "filing such a petition at the appropriate time in the future."

¶ 22    Accordingly, the trial court denied defendant's motion to dismiss counts I and II and dismissed without prejudice count III of Pnevmatikos's petitions, further finding "under [Illinois] Supreme Court Rule 304(a) [(eff. Mar. 8, 2016)], that there exists no just reason to delay either enforcement or appeal, or both."

¶ 23    On April 25, 2023, Pappas filed notices of appeal seeking reversal of the trial court's April 13, 2023, order.

¶ 24    On April 26, 2023, Pnevmatikos moved "for issuance of [a] memorandum of judgment." Pnevmatikos noted that the court had denied Pappas's motion to dismiss Pnevmatikos's petitions, finding that they were timely registered and capable of enforcement. Citing section 12-101 of the Code of Civil Procedure (735 ILCS 5/12-101 (West 2020)), Pnevmatikos stated that, in order to put a lien on real property, he needed a

> "memorandum or copy of the judgment signed by a judge or a copy attested by the clerk of the court entering it and showing the court in which entered, date, amount, number of the case in which it was entered, name of the party in whose favor and name and last known address of the party against whom entered." *Id.*

Pnevmatikos also asserted that, under the Uniform Foreign-Money Claims Act, "If an action is brought to enforce a judgment of another jurisdiction expressed in a foreign money and the judgment is recognized in this State as enforceable, the enforcing judgment must be entered as provided in Section 12-637," (*id.* § 12-640), which provided in turn that "a judgment or award on a foreign-money claim must be stated in an amount of the money of the claim" (*id.* § 12-637).

9

Pnevmatikos requested that the court enter memoranda of judgment "reflect[ing] the amount of each claim in euros."

¶ 25    Pappas responded on May 25, 2023, asserting that, because he filed his notices of appeal from the April 13, 2023, order, the circuit court was divested of jurisdiction. Additionally, Pappas maintained that "[n]o judgments had [yet] been recognized/entered" by the trial court. Pappas asserted that the judgments are "not automatically entered" upon the filing of a petition to register and that the court instead was required to enter an order registering the foreign judgments that Pnevmatikos sought in his petitions. Pappas asserted that it would "be in error" for the trial court to have concluded that the judgments were already registered because there was another section of the Recognition Act, section 12-664 (*id.* § 12-664), which provided various defenses to the recognition of a foreign-country judgment to which the Recognition Act might otherwise apply. Pappas stated that he "would assert, and hereby does assert," a defense based on section 12-664(c)(3), which provides that a court "need not recognize a foreign-country judgment if *** the judgment or the cause of action on which the judgment is based is repugnant to the public policy of this State or of the United States." *Id.* § 12-664(c)(3).

¶ 26    On May 8, 2023, the trial court entered an order granting Pnevmatikos's motion for entry of memorandum of judgment. The court noted that,

> "As stated in the Court's April 13, 2023, Memorandum Opinion and Order, the Court found that each Greek judgment became an original Illinois judgment on November 13, 2021, pursuant to section 12-652(a) of the Enforcement Act as well as section 12-667 of the Recognition Act, and [Pappas] has not complied with Rule 305(a) in order to obtain a stay of enforcement of those money judgments."

The court further found that defendant's attempt to assert a defense to recognition based on section

12-664(c)(3) was "untimely" and "without any substance or factual support."

¶ 27    That same day, the court entered memoranda of judgment in favor of Pnevmatikos and against Pappas, in the amounts of €305,863.90, €360,714.59 and €39,330.[2]

¶ 28    Pappas filed a notice of appeal in this court, seeking "reversal of the Order dated April 13, 2023 denying his motion to dismiss." Pappas contends that the trial court erred in denying his motion to dismiss Pnevmatikos's petitions because the petitions were filed "beyond the 15-year statute of limitations."

¶ 29    Before turning to the merits of this appeal, we must consider our jurisdiction to hear this appeal. This court has an independent duty to consider whether it has jurisdiction to hear an appeal and to dismiss an appeal when jurisdiction is lacking. *Fabian v. BGC Holdings, LP*, 2014 IL App (1st) 141576, ¶ 12; see *People v. Smith*, 228 Ill. 2d 95, 104-06 (2008) ("[T]he ascertainment of its own jurisdiction is one of the two most important tasks of an appellate court panel when beginning the review of a case."). This obligation exists even if the parties have not raised the issue of jurisdiction or agree that jurisdiction exists. See *Nwaokocha v. Illinois Department of Financial & Professional Regulation*, 2018 IL App (1st) 162614, ¶ 43 ("appellate jurisdiction may not be conferred by *laches*, consent, waiver, or estoppel"); *Daewoo International v. Monteiro*, 2014 IL App (1st) 140573, ¶ 72.

¶ 30    In reviewing the appellate briefs submitted in this matter, this court identified two issues implicating our jurisdiction.

¶ 31    First, in Pappas's briefs, he referenced that he was "forc[ed] into bankruptcy" as a result of the trial court's judgment. This court entered an order on August 12, 2024, directing Pappas to

---

[2]The record indicates that the court entered three memorandums of judgment, one for each of the payment orders, although we note that an executed copy of the memorandum of judgment for the €39,330 payment order does not appear in the record on appeal.

advise this court whether there was a petition for bankruptcy filed after this case began and whether any resulting stay order had been lifted.

¶ 32    Pappas responded, indicating that he filed for Chapter 7 bankruptcy on June 28, 2023, and that the automatic stay had not been lifted. As a result, this court asked the parties to advise this court why the appeal should not be dismissed for lack of this court's jurisdiction. See *In re Application of the County Treasurer & ex officio County Collector of Cook County*, 308 Ill. App. 3d 33, 39 (1999) (where a motion to reconsider and notice of appeal were filed in violation of the automatic stay, the notice of appeal was void, and the appellate court lacked jurisdiction to consider the appeal and was required to dismiss it); *In re Capgro Leasing Associates*, 169 B.R. 305, 311, 313 (Bankr. E.D.N.Y. 1994) ("Because *no entity, including a debtor*, may limit or waive the stay, nor appeal during the stay's pendency, the only option is to obtain relief from the stay, and this may only be sought from the bankruptcy judge." "Bankruptcy Rule 6009 does not authorize a debtor in possession or a trustee to pursue an appeal of an action initially commenced against the debtor, absent an order granting relief from the automatic stay. We instead concur with the reasoning of the vast majority of circuit and lower courts *** and hold that Debtor in the instant case violated the automatic stay when it appealed *** without having first obtained relief from the automatic stay." (Emphasis added.)); *Wright Development Group, LLC v. Walsh*, 2014 IL App (1st) 130646-U.

¶ 33    In response, Pnevmatikos contended that this court lacked jurisdiction and the case should be dismissed. Pappas responded that he had received advice from legal counsel that the automatic stay did not prevent him from appealing the judgment. Pappas further asserted that, as a result of this court's order, he filed a motion for relief from the automatic stay in the bankruptcy court, and

he requested that this court wait until the bankruptcy court ruled on that motion before dismissing the appeal.

¶ 34    On September 20, 2024, this court stayed the matter until further order of court.

¶ 35    On October 1, 2024, Pappas filed a motion to lift the stay, submitting an order from the bankruptcy court granting his motion to terminate the automatic stay as to this appeal. This court allowed that motion on October 10, 2024.

¶ 36    Another possible jurisdictional issue, however, still remained. In this case, Pappas contends that jurisdiction is proper in accordance with Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), based on the trial court's April 13, 2023, order finding no just reason to delay enforcement or appeal or both. We note, however, that this court is not bound by the rule invoked in a notice of appeal, and we are not deprived of jurisdiction by an appellant's citation to the wrong rule therein. See *O'Banner v. McDonald's Corp.*, 173 Ill. 2d 208, 211 (1996). Accordingly, we will consider whether this court has jurisdiction to consider this appeal under Rule 304(a) or any other rule.

¶ 37    It is well established that the jurisdiction of appellate courts is limited to reviewing appeals from final judgments, subject to statutory or supreme court rule exceptions. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994) ("Every final judgment of a circuit court in a civil case is appealable as of right."); *State Farm Mutual Automobile Insurance Co. v. Illinois Farmers Insurance Co.*, 226 Ill. 2d 395, 415 (2007). A final judgment "ascertains and fixes absolutely and finally the rights of the parties in the lawsuit," determining "the litigation on the merits so that, if affirmed, the only thing remaining is to proceed with the execution of the judgment." *Flores v. Dugan*, 91 Ill. 2d 108, 112 (1982); see *Big Sky Excavating, Inc. v. Illinois Bell Telephone Co.*, 217 Ill. 2d 221, 233 (2005).

¶ 38    Where a matter involves multiple claims, appeal from a final judgment that resolves some, but not all, of the claims is permissible under Rule 304(a), but only if the trial court makes an

express written finding that there is no just reason for delaying enforcement, appeal, or both. See *Palmolive Tower Condominiums, LLC v. Simon*, 409 Ill. App. 3d 539, 542-43 (2011); Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016) ("an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both"). Although Rule 304(a) permits appeals from orders that do not dispose of an entire proceeding, it applies only to *final* judgments or orders, and a circuit court's inclusion of Rule 304(a) language cannot make a nonfinal order final and appealable. *Blumenthal v. Brewer*, 2016 IL 118781, ¶ 24; *Blott v. Hanson*, 283 Ill. App. 3d 656, 660 (1996) ("A Rule 304(a) finding does not make a nonfinal order appealable; rather, the Rule 304(a) finding makes a final order appealable where there are multiple parties or claims in the same action."); *Viirre v. Zayre Stores, Inc.*, 212 Ill. App. 3d 505, 511 (1991) (the fact that "the trial court made a finding pursuant to Rule 304(a) does not necessarily mean that the order was final and appealable if the order was not in fact final"). If the trial court's order is not final, inclusion of Rule 304(a) language is insufficient to confer appellate jurisdiction. *Blumenthal*, 2016 IL 118781, ¶ 24. "An order or judgment is considered to be final and appealable for purposes of [Rule 304(a)] if it terminates the litigation between the parties on the merits or disposes of the rights of the parties, either on the entire controversy or a separate part thereof." *Id.* ¶ 23.

¶ 39    In this case, Pappas appeals the circuit court's April 13, 2023, order denying his motion to dismiss Pnevmatikos's petitions for recognition and registration of foreign judgments. A trial court's denial of a motion to dismiss is normally an interlocutory order that is not final and appealable, and the inclusion of 304(a) language will not confer jurisdiction on the appellate court. *State Farm Mutual Automobile Insurance Co.*, 226 Ill. 2d at 415; *Walker v. Carnival Cruise Lines,*

14

*Inc.*, 383 Ill. App. 3d 129, 132 (2008); *Jursich v. Arlington Heights Federal Savings & Loan Ass'n*, 83 Ill. App. 3d 352, 353 (1980) (The inclusion of Rule 304(a) language "cannot make a nonfinal order, such as the denial of a motion to dismiss, into a final order.").

¶ 40    This court, however, must look, not just to the form of the order, but to its substance and effect to determine whether that order was final. *Clemons v. Mechanical Devices Co.*, 202 Ill. 2d 344, 350 (2002) ("in determining whether an order is final, one should look to its substance and effect rather than to its form"); *Schal Bovis, Inc. v. Casualty Insurance Co.*, 314 Ill. App. 3d 562, 567 (1999) ("it is the substance of the trial court's order that determines whether it is final, not whether the court has used any particular language"). "In other words, whether the trial court's dismissal order is final (and thereby appealable under Rule 304(a)) or is not final (and, therefore, not appealable) is a function not of its words, but of its effect." *Krause v. USA DocuFinish*, 2015 IL App (3d) 130585, ¶ 16 (citing *Schal Bovis*, 314 Ill. App. 3d at 568).

¶ 41    Following briefing in this case, this court directed the parties to file supplemental briefs regarding this court's jurisdiction. In Pappas's supplemental brief, he contends that, "[i]rrespective of the trial court's Illinois Supreme Court Rule 304(a) language," the April 13, 2023, order was a "final judgment which [is] 'appealable as of right' " under Rule 301. Pappas contends that the trial court's order denying his motion to dismiss "left nothing more to be decided leaving [Pnevmatikos] free to execute on the Greek Judgments." In response, Pnevmatikos "does not dispute [Pappas]'s position." Pnevmatikos further asserts that following the April 13, 2023, order, the trial court entered a "post-judgment" order that memoranda of judgment would issue for each of the payment orders based on the denial of Pappas's motion to dismiss. Pnevmatikos contends that this "confirm[s] that [the trial judge] considered his April 13, 2023, order to meet all the requirements of a final judgment as well."

¶ 42    Although the denial of a motion to dismiss would not normally confer jurisdiction on the appellate court (see *Mund v. Brown*, 393 Ill. App. 3d 994, 996 (2009)), the context of this case presents an unusual circumstance. To effectively review the finality of the April 13, 2023, order in this case, we must first understand the law governing enforcement of foreign judgments in Illinois.

¶ 43    The enforcement of non-Illinois judgments is governed by two uniform acts—the Enforcement Act and the Recognition Act. 735 ILCS 5/12-650 to 12-657 (West 2020); *id.* §§ 12-661 to 12-672. The Enforcement Act governs the enforcement of judgments of courts "of the United States or of any other court which is entitled to full faith and credit in this State." *Id.* § 12-651. Any such judgment that is

> "filed or registered under [the Enforcement] Act shall be construed to be an original Illinois judgment from the date it is filed with the clerk of the circuit court and for purposes of enforcement and revival, shall be treated in exactly the same manner as an Illinois judgment entered on that same date." *Id.* § 12-652.

¶ 44    The Recognition Act applies, with some limited exceptions, to a foreign-country judgment, to the extent that it "grants or denies recovery of a sum of money" and it is "final, conclusive, and enforceable" under the law of the foreign country where rendered (*id.* § 12-663). The Recognition Act, however, " 'serves the purpose only of allowing [an Illinois] court a means to recognize a foreign country's judgment' "—it " 'does not establish the procedure to file or enforce a foreign judgment.' " *CE Design Ltd. v. HealthCraft Products, Inc.*, 2017 IL App (1st) 143000, ¶ 21 (quoting *Pinilla v. Harza Engineering Co.*, 324 Ill. App. 3d 803, 807 (2001)). Instead, once a court finds that a foreign-country judgment is entitled to recognition, the foreign-country judgment is "(1) conclusive between the parties to the same extent as the judgment of a sister state entitled to

full faith and credit in this State would be conclusive; and (2) enforceable in the same manner and to the same extent as a judgment rendered in this State." 735 ILCS 5/12-667 (West 2020).

¶ 45    In *La Societe Anonyme Goro v. Conveyor Accessories, Inc.*, 286 Ill. App. 3d 867, 870 (1997), this court considered the question of what limitations period applied to the enforcement of foreign county judgments under a prior version of the Recognition Act. At the time, the Recognition Act did not specifically provide a limitations period, and the respondent contended that the petition to recognize a French judgment was barred by the five-year limitations period applicable to general civil actions, whereas the petitioner asserted that the petition was timely under the seven-year limitations that applied to Illinois judgments and to sister state judgments under the Enforcement Act. The appellate court agreed with petitioner, finding that, once recognized, the foreign-country judgment was enforceable in the same manner as the judgment of a sister state, and accordingly, the seven-year limitations period governing the Enforcement Act also applied to the Recognition Act. *Id.* The court explained that the "[Enforcement] Act and the Recognition Act are to be interpreted to complement each other rather than to be mutually exclusive and that they are to be enforceable in the same manner." *Id.* at 871.

¶ 46    As applicable to this case, the Recognition Act governs the analysis of whether the Greek judgments are capable of recognition in Illinois. However, once the trial court chooses to recognize those Greek judgments, they are "construed to be *** original Illinois judgment[s] from the date [they were] filed with the clerk of the circuit court," as provided in the Enforcement Act. 735 ILCS 5/12-652 (West 2020); see *Doctor's Associates, Inc. v. Duree*, 319 Ill. App. 3d 1032, 1040-41 (2001) ("the proper filing of a foreign judgment has the effect of instantly creating an enforceable Illinois judgment under the Act and the judgment creditor may thereafter proceed to enforce the judgment against the judgment debtor"); *Dear v. Russo*, 973 S.W.2d 445, 446 (Tex. App. 1998)

17

("When a final foreign judgment is properly filed under the Uniform Act, the filing has the effect of initiating an enforcement proceeding and instantly rendering a final judgment ***."); *Howell v. Dyck-O'Neal, Inc.*, 682 S.W.3d 906, 907 (Tex. App. 2023) ("a valid foreign judgment filed in Texas instantly creates an enforceable and appealable Texas judgment").

¶ 47    In the trial court's order denying Pappas's motion to dismiss, the trial court recognized the Greek judgments and construed them as enforceable Illinois judgments from the date of their filing on November 3, 2021. This type of order has previously been recognized to be final, despite its form as the denial of a motion to dismiss.

¶ 48    In *E.M.E. Enterprises, Inc. v. Anvil Brand Shoe Co.*, 231 Ill. App. 3d 937 (1992), the plaintiff filed a petition to register a Pennsylvania judgment in Illinois. Defendants moved to dismiss that petition, and the petition was denied on September 4, 1991. Defendants then filed a "Post Trial Motion" in January 1992, seeking reconsideration, and the trial court denied the motion on January 10, 1992. *Id.* at 939. Defendants appealed the January 1992 order, but this court concluded that it had "no jurisdiction of this appeal, because the circuit court order of September 4, 1991, denying defendants' motion to dismiss was a final order disposing of the case and appealable as a matter of right pursuant to Supreme Court Rule 301." *Id.*

¶ 49    This court explained that "[o]rdinarily, the denial of a motion to dismiss is not a final order." *Id.* at 940. However, the Enforcement Act provided that filing of the petition to register "constitutes registration of the foreign judgment" and that a refusal "to set aside the registration becomes a final judgment." (Internal quotation marks omitted.) *Id.* The court found that a "motion to dismiss the petition for registration after registration has taken place can only be construed as a request 'to set aside the registration' which, upon denial, creates a 'final judgment.' " *Id.*

¶ 50   Although *E.M.E. Enterprises* arose under a prior version of the Enforcement Act governing foreign judgments, its analysis remains significant. By denying Pappas's motion to dismiss Pnevmatikos's petitions, the court in this case refused to set aside the registration that the trial court found had taken place on November 3, 2021, when Pnevmatikos filed his petitions to recognize and register the Greek judgments, thus "creat[ing] a 'final judgment.' " *Id.*; see *Evans v. Advance Schools, Inc.*, 70 Ill. App. 3d 947, 949 (1979) (affirming the denial of a motion to dismiss a plaintiff's petition to register a California default judgment). The trial court determined that the three payment orders were final, conclusive, and effective in Greece in 2008 and that those payment orders were timely filed judgments in Illinois when they were registered in 2021.

¶ 51   In the circumstances presented here, we agree with the parties that the substance and effect of the trial court's order indicates that the court was ruling on the ultimate issue—whether the Greek money judgments were capable of registration and recognition in Illinois. Accordingly, that order was a final judgment as to Pnevmatikos's first two counts, for "Recognition" and "Registration" of the Greek judgments. It "determine[d] the litigation on the merits so that, if affirmed, the only thing remaining [was] to proceed with the execution of the judgment." *Flores*, 91 Ill. 2d at 112.

¶ 52   Pnevmatikos's petitions, however, contained a third count, seeking "revival" of the foreign judgment. The circuit court found that count to be "prematurely brought" and thus dismissed it "without prejudice" to "filing such a petition at the appropriate time in the future."

¶ 53   Based on our review of the record, we believe that this count provided the rationale for the trial court's decision to invoke Rule 304(a) in issuing its order, finding that there existed no just reason to delay enforcement or appeal, or both, under that Rule. The reference to Rule 304(a) appears to be based on the trial court's understanding that a dismissal without prejudice is not a

final and appealable order (see *Shrock v. Meier*, 2024 IL App (1st) 230069, ¶ 13), and accordingly, the court entered Rule 304(a) language so that the final judgments as to Pnevmatikos's other two claims could be reviewed on appeal. See Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016) ("an appeal may be taken from a final judgment as to one or more but fewer than all of the *** claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both").

¶ 54    Indeed, the trial court was correct that an order dismissing a complaint or claim without prejudice is not considered final. *Village of Orion v. Hardi*, 2022 IL App (4th) 220186, ¶ 19. However, this court has repeatedly recognized that a trial court's labeling of a dismissal as "without prejudice" is not determinative. In *Schal Bovis*, 314 Ill. App. 3d at 568, this court considered the trial court's dismissal of the plaintiffs' claim against their insurer. The trial court found that the plaintiffs had not "suffered any legally cognizable damages" because their excess carrier had "had fully paid the judgment against them." *Id.* at 567. The trial court then "changed its ruling to being 'without prejudice' " after the plaintiffs noted that their excess policy limit had been reduced by the payment, and that if they needed to make additional claims, the coverage available would be reduced. *Id.* The trial court reasoned that the plaintiffs could raise a claim in the future if they "suffered the requisite harm." *Id.*

¶ 55    In reviewing the trial court's dismissal order, this court explained:

> "Because the effect of a dismissal order is determined by its substance, and
> not by the incantation of any particular magic words, a trial court's description of a
> final judgment as being 'without prejudice' is of no greater logical effect than a
> trial court's statement that a non-final dismissal judgment is 'with prejudice.' In
> each instance, whether the trial court's dismissal order is final (and thereby

20

appealable under Rule 304(a)) or is not final (and, therefore, not appealable) is a function not of its words, but of its effect. Thus, if the dismissal is because of a deficiency that could be cured by simple technical amendment, the order is not the subject of appeal. On the other hand, if the dismissal is because, as here, of a perceived substantive legal deficiency (*e.g.*, that the plaintiffs have not sustained damages as a matter of law and, therefore, lack standing to sue), the dismissal order is final." *Id.* at 568.

¶ 56 Looking at the basis for the dismissal of Pnevmatikos's revival claim, it is clear that the dismissal of that claim was "with prejudice" and not "without prejudice." Like the dismissal in *Schal Bovis* in which the trial court determined that the plaintiffs had not yet sustained damages to support their claim, the dismissal of Pnevmatikos's revival claim was based on the trial court's determination that the claim was not yet ripe. The trial court found that Pnevmatikos's revival claim was "prematurely brought," that the Greek judgments were enforceable in Illinois for seven years after their initial filing, and that they would not be capable of revival until November 2027. There is no question here that Pnevmatikos could not save his revival claim by a technical amendment. Although the trial court dismissed the claim "without prejudice" to Pnevmatikos "filing such a petition at the appropriate time in the future"—*i.e.*, after November 2027—the trial court's dismissal was based on a legal deficiency, and consequently, the trial court's dismissal of count III was final as well. *Id.*; see *Erickson v. Knox County Wind Farm LLC*, 2024 IL App (4th) 230726, ¶ 65 ("if the dismissal is because of a perceived substantive legal deficiency—for example, the plaintiffs have not sustained damages as a matter of law and, therefore, lack standing to sue—the dismissal order is final").

¶ 57    Accordingly, we conclude that we have jurisdiction over this case under Rule 301 and not Rule 304(a).

¶ 58    Our conclusion that the April 13, 2023, order was final and appealable is further supported by the trial court's later entry of Pnevmatikos's requested memoranda of judgment. Generally, the filing of a notice of appeal divests the trial court of jurisdiction to enter any further substantive orders. *Chavin v. General Employment Enterprises, Inc.*, 222 Ill. App. 3d 398, 405 (1991). However, a subsequent order that is merely explanatory and does not change the substance of the earlier order is a valid exercise of the trial court's jurisdiction. *Id.*; see *Estate of Young v. Department of Revenue*, 316 Ill. App. 3d 366, 374 (2000) (finding that the trial court's earlier order was a final order, despite the court entering a memorandum of judgment three weeks later).

¶ 59    Here, the trial court's April 13, 2023, order, indicated the trial court's understanding that it had already entered a final judgment on the suit and that the memoranda of judgment were merely being entered to execute upon the judgment, which the trial court retained jurisdiction to do. *Chavin*, 222 Ill. App. 3d at 405. The court referenced its prior final order and the findings it had made, including noting that,

> "As stated in the Court's April 13, 2023, Memorandum Opinion and Order, the Court found that each Greek judgment became an original Illinois judgment on November 13, 2021, pursuant to section 12-652(a) of the Enforcement Act as well as section 12-667 of the Recognition Act, and [Pappas] has not complied with Rule 305(a) in order to obtain a stay of enforcement of those money judgments."

In these circumstances, it is clear that the April 13, 2023, order was final and appealable.

¶ 60    Having confirmed our jurisdiction over this matter, we turn to the merits of Pappas's appellate challenge. Specifically, Pappas contends that the trial court erred in denying his motion

to dismiss Pnevmatikos's 2021 petitions as barred by the Recognition Act's 15-year statute of limitations. Pappas asserts that the Greek payment orders were "effective" in Greece in 2003 and that, accordingly, the statute of limitations for registering them under the Recognition Act expired in 2018.

¶ 61    Defendant's motion to dismiss the petitions was brought pursuant to section 2-619 of the Code of Civil Procedure, which allows for dismissal of an action if "the claim asserted against defendant is barred by other affirmative matter." 735 ILCS 5/2-619(a)(9) (West 2020). A defendant has the initial burden of proving the affirmative defense relied upon in its motion to dismiss. *Mayle v. Urban Realty Works, LLC*, 2022 IL App (1st) 210470, ¶ 42; *Kirby v. Jarrett*, 190 Ill. App. 3d 8, 12 (1989).

¶ 62    An assertion that a claim is barred by the statute of limitations is a matter properly raised by a section 2-619 motion to dismiss. 735 ILCS 5/2-619(a)(5) (West 2020). Where a defendant raises a statute of limitations defense, the defendant bears the burden of showing that the action in question was not raised within the applicable limitation period. *Johnson-Jordan v. CITGO Petroleum Corp.*, 2022 IL App (2d) 210209, ¶ 13; *Brummel v. Grossman*, 2018 IL App (1st) 162540, ¶ 23. If the defendant makes such a showing, the burden then shifts to the plaintiff to set forth sufficient facts to avoid the statutory limitation. *Mayle*, 2022 IL App (1st) 210470, ¶ 42; *Johnson-Jordan*, 2022 IL App (2d) 210209, ¶ 13. When ruling on a motion to dismiss made pursuant to section 2-619, a court must "accept as true all well-pleaded facts in plaintiffs' complaint and all inferences that can reasonably be drawn in plaintiffs' favor." *Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474, 488 (2008). A motion to dismiss should only be granted if it is apparent that no set of facts can be proved that would entitle a plaintiff to relief. *Mayle*, 2022 IL App (1st) 210470, ¶ 40; *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 277-78 (2003). The question on

review of a motion to dismiss pursuant to section 2-619 is "whether there is a genuine issue of material fact and whether defendant is entitled to judgment as a matter of law." *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 494 (1994). We review the denial of a motion to dismiss under section 2-619 *de novo. Cangemi v. Advocate South Suburban Hospital*, 364 Ill. App. 3d 446, 456 (2006).

¶ 63 In both the trial court, and in this court, the parties agree that the applicable statute of limitations provides that an "action to recognize a foreign-country judgment must be commenced within the earlier of the time during which the foreign-country judgment is effective in the foreign country or 15 years from the date that the foreign-country judgment became effective in the foreign country." 735 ILCS 5/12-669 (West 2020). The parties also agree that the Recognition Act applies only to judgments that are "final, conclusive and enforceable," and that a foreign-country judgment is not "effective" and the statute of limitations does not begin to run until the foreign money judgment meets those requirements. The parties likewise agree that the payments orders here were "enforceable" in 2003.

¶ 64 The parties disagree, however, as to when the payment orders were "final" and "conclusive." Pappas contends that the enforceability of the orders in 2003 necessarily means that they were also "final" and "conclusive" at that time. Pnevmatikos, by contrast, maintains that the payment orders were not "final" or "conclusive" until the Greek appellate court finally resolved Pappas's appeals.

¶ 65 Initially, we note that this court has found limited cases from Illinois relating to the Recognition Act. Because the Recognition Act is based on the Uniform Act, we can consider the Uniform Act and its comments, as well as cases from other jurisdictions that have adopted the same Uniform Act as persuasive authority. See *Tompkins State Bank v. Niles*, 127 Ill. 2d 209, 228-

29 (1989) ("The official comments to [a] Uniform Act do not, of course, have the force of statutory language, but are a permissible and typically persuasive aid in determining legislative intent. Courts may assume that the legislature adopted the legislation with the same intent evidenced by the official comments unless the language in the adopting statute unambiguously indicates the contrary."); *Reed v. Doctor's Associates, Inc.*, 331 Ill. App. 3d 618, 622 (2002) (" 'judicial opinions from other jurisdictions interpreting [uniform] acts are given greater-than-usual deference' " (quoting *Bass v. SMG, Inc.*, 328 Ill. App. 3d 492, 497 (2002))).

¶ 66    In arguing that the Greek money judgments were final, conclusive, and enforceable in 2003, Pappas does not distinguish between those three requirements, contending only that the enforceability of the money judgments in 2003 also means that they were final and conclusive at that time. In support, Pappas relies on several out of state cases, which he contends establish that a foreign country judgment is "final, conclusive, and enforceable" between the parties whenever it "grants or denies the recovery of a specific sum of money." Based on our review of those cases, we do not find that they support defendant's contention that the grant of a sum of money is determinative of the finality *and* conclusiveness *and* enforceability of a judgment. Instead, it appears that the language cited by Pappas relates to a prior definition in the Uniform Act for conclusiveness. See *e.g. Alesawy v. Badawi*,  57 N.Y.S.3d 879 (N.Y. Sup. Ct. 2017) ("A foreign country judgment is conclusive between the parties to the extent that it grants or denies recovery of a sum of money ***."). In *GENUJO LOK Beteiligungs GmbH v. Zorn*, 2008 ME 50, ¶ 10, 943 A.2d 573, 577, the Supreme Judicial Court of Maine held that "[u]nless one of the statutory grounds for nonrecognition applies," a foreign country judgment "is considered conclusive between the parties to the extent that it grants or denies recovery of a sum of money and is enforceable in the same manner as the judgment of a sister state that is entitled to full faith and

credit." (Internal quotation marks omitted.) Similarly, the Northern District of Indiana, in *Van Den Biggelaar v. Wagner*, 978 F. Supp. 848, 860 (N.D. Ind. 1997), held that the Act applies to any foreign judgment that is final, conclusive, and enforceable where rendered, even though an appeal therefrom is pending or it is subject to appeal. The court there also held that any such judgment is "conclusive" whenever it "grants or denies recovery of a sum of money." (Internal quotation marks omitted.) *Id.*; see *Bridgeway Corp. v. Citibank*, 45 F. Supp. 2d 276, 286 (S.D.N.Y. 1999) (a foreign country judgment is "conclusive" "to the extent that it grants or denies recovery of a sum of money," unless it was rendered in a system without due process, or where there was no personal jurisdiction over the defendant (internal quotation marks omitted)).

¶ 67    Pappas's implicit position that a judgment's enforceability is determinative on finality and conclusiveness presents an issue of statutory construction. The construction of a statute is a question of law, which we review *de novo. In re Estate of Dierkes*, 191 Ill. 2d 326, 330 (2000). The primary objective of this court when construing the meaning of a statute is to ascertain and give effect to the intent of the legislature. *Southern Illinoisan v. Illinois Department of Public Health*, 218 Ill. 2d 390, 415 (2006). The plain language of a statute is the most reliable indication of the legislature's objectives in enacting that particular law, and when the language of the statute is clear, it must be applied as written without resort to aids or tools of interpretation. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006). We must avoid any interpretation that would render any portion of the statute superfluous, meaningless, or void. *Sylvester v. Industrial Comm'n*, 197 Ill. 2d 225, 232 (2001). Just as we may not read out any portion of the statute, we may not alter the plain meaning of a statute's language by reading into it exceptions, limitations, or conditions not expressed by the legislature. *Board of Education of Woodland Community Consolidated School District 50 v. Illinois State Charter School Comm'n*, 2016 IL App (1st) 151372, ¶ 38.

¶ 68    The language of the Recognition Act provides that it applies only "to the extent that the judgment *** under the law of the foreign country where rendered, is final, conclusive, and enforceable." 735 ILCS 5/12-663 (West 2020). Pappas's position—that an enforceable judgment is also necessarily final and conclusive—reads the latter two requirements out of the statute, rendering them superfluous. Such an interpretation is not tenable. See *Sylvester*, 197 Ill. 2d at 232; *Board of Education*, 2016 IL App (1st) 151372, ¶ 34.

¶ 69    The comments to the Uniform Act also confirm that enforceability is not synonymous with finality or conclusiveness. Those comments emphasize that the requirements that a foreign-country judgment must be final, conclusive, and enforceable are "*distinct*, although inter-related concepts." (Emphasis added.) Unif. Foreign-Country Money Judgments Recognition Act § 3 cmt. 3, at 5 (Nat'l Conf. of Comm'rs on Unif. State L. 2005). Accordingly, we find that the statute of limitations under the Recognition Act only begins to run at the point in time when the Greek judgments met all three requirements—when they were "final, conclusive, and enforceable" in Greece.

¶ 70    Having so found, we turn to the question of when the Greek judgments met those requirements.

¶ 71    In *Manco Contracting Co. (W.L.L.) v. Bezdikian*, 195 P.3d 604, 607 (Cal. 2008), the Supreme Court of California addressed a similar question to the one we are faced with here—when a Qatari judgment became final, conclusive, and enforceable for purposes of the Recognition Act. The defendant in *Manco* argued that the Recognition Act's statute of limitations began to run in 1997, when enforcement procedures became available under Qatari law. The plaintiff conceded that enforcement procedures were available upon issuance of the judgment but provided evidence that a judgment was not considered "final" in Qatar until an appeal was concluded. *Id.* The

27

California Supreme Court emphasized the distinct nature of the three requirements and explained that the defendant's argument conflated enforceability and finality when the Act "explicitly treats them as separate concepts. A foreign judgment must be 'final *and* conclusive *and* enforceable' to be recognized here." (Emphasis in original.) *Id.* at 612 n.8. The California Supreme Court concluded that, based on the evidence before it, a judgment rendered in Qatar was not final and conclusive and enforceable in Qatar until all appeals had been exhausted. *Id.* at 613.

¶ 72    Pappas, however, contends that *Manco* is distinguishable because under Qatari law, the Qatari judgment was not final until the Qatari appellate court upheld the judgment, but that the evidence before the trial court in this case showed that Greek law is different. We disagree.

¶ 73    As the trial court noted, the translations provided by the parties of the Greek statute regarding the Greek limitations period (article 268 of the Greek Civil Code (Astikos Kodikas [A.K.] [Civil Code] 268 (Greece))), indicates that an initial payment order, although enforceable, does not "become final" until after a "final rejection of the opposition." Moreover, the parties' Greek legal experts agreed that the 20-year Greek limitations period, which began to run after the "final rejection of the opposition," would not expire until 2028. In these circumstances, we conclude that the Greek payment orders, although enforceable in 2003, did not become final under Greek law until 2008.

¶ 74    Accordingly, Pnevmatikos's petitions were timely filed on November 3, 2021, which was within the 15-year statute of limitations set forth in the Recognition Act. We thus affirm the trial court's order denying Pappas's motion to dismiss them.

¶ 75    For the foregoing reasons, we affirm the decision of the circuit court of Cook County.

¶ 76    Affirmed.

***Pnevmatikos v. Pappas*, 2025 IL App (1st) 230739**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, Nos. 21-L-50484, 21-L-50485, 21-L-50486; the Hon. Patrick Heneghan, Judge, presiding. |
| **Attorneys for Appellant:** | Peter S. Stamatis, of Law Offices of Peter S. Stamatis, P.C., and Steven S. Shonder, both of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kyle Kasmarick, of Syregelas & Kasmarick LLC, of Chicago, for appellee. |